**UNITED STATES of America, Appellee,**

v.

**Raul E. MARTIN, Defendant,**

**Michael J. Thomas, Defendant–Appellant.**

No. 848, Docket 95–1425.

United States Court of Appeals,
Second Circuit.

Argued Jan. 16, 1996.

Decided March 11, 1996.

David C. Sleigh, St. Johnsbury, VT (Sleigh & Williams, St. Johnsbury, VT, of Counsel), for Defendant–Appellant, Michael J. Thomas.

William B. Darrow, Assistant United States Attorney for the District of Vermont (Charles R. Tetzlaff, United States Attorney, and David V. Kirby, Assistant United States Attorney for the District of Vermont, of Counsel), for Appellee, United States of America.

Before: NEWMAN, Chief Judge, MAHONEY and FRIEDMAN,* Circuit Judges.

FRIEDMAN, Circuit Judge:

This is a Sentencing Guidelines case in which the appellant Thomas challenges the sentence imposed following his conviction under a guilty plea of conspiring to violate federal firearms laws. He contends that the district court erred by (1) enhancing his sentence because he had reason to believe that the firearms he sold would be used in other felony offenses, (2) refusing to reduce his sentence because he was a minor participant in the offense, and (3) refusing to depart downward from the guideline range to reflect his family and community ties and activities. We affirm.

I.

A. The facts relating to Thomas' offense, as developed at the sentencing hearing, are basically undisputed.

At the time of the events involved, Thomas was a federally-licensed firearms dealer, who conducted his business at a store in a small town in upstate New Hampshire. Such dealers may sell and transfer firearms only to persons who reside in the state where their place of business is located. 18 U.S.C. § 922(b)(3) (1988). Dealers are required to maintain detailed records of their firearms transactions. See 18 U.S.C. § 923(g)(1)(A) (1988); 27 C.F.R. §§ 178.121–.129 (1991). Failure to do so, or the making of false entries in those records, is unlawful and subject to criminal penalties. 18 U.S.C. § 922(m), 924(a) (1988 & Supp. III 1991).

In late 1991 and early 1992, Thomas sold more than 100 handguns to three men, Velez, Nieves and Martin, at least one of whom was from New York City. These customers brought the guns back to New York City and illegally sold them on the stréet to drug traffickers. Most of these sales—more than 100—were made during the last three months of 1991. Thomas sold 87 handguns to these three individuals between October 1, 1991 and February 28, 1992. In December 1991, Thomas sold them approximately 50 handguns. From December 12 to 15, he sold Velez 18 firearms.

Almost all the weapons he sold to these three individuals were low-grade, easily concealable, inexpensive semi-automatic pistols. Many of the pistols were the same make and model, including 18, 14, and 12 of 3 particular weapons.

Velez directly purchased most of the pistols for cash. He made frequent visits to Thomas' shop, often ordering guns which he picked up on his next visit. At some point in their dealings Thomas became aware that Velez was from New York City, even though he had a Vermont drivers license (as did the other two). He also knew that Velez was taking the guns to New York City.

Thomas made numerous false entries in the records he was required to keep. For example, he broke down into separate sales on different days a single sale of a number of guns. His records also falsely stated that the guns were being sold by a gun dealer in Vermont, although he actually sold them from his New Hampshire store.

The case agent from the Bureau of Alcohol, Tobacco and Firearms assigned to this case stated at the sentencing hearing that 28 of the guns Thomas had sold to the three had been recovered in New York City, New Jersey and Puerto Rico, "[i]n circumstances ranging from criminal possession, assault, robbery, narcotics search warrant, attempted murder, criminal shootings."

B. Thomas pleaded guilty in the United States District Court for the District of Vermont to one count of an indictment charging him with conspiring to violate various federal firearms laws, in violation of 18 U.S.C. § 371 (1988).

After an evidentiary hearing, the district court calculated Thomas' sentence under the Sentencing Guidelines as follows: the base offense level for conspiracy to violate federal firearms laws was 12. U.S. Sentencing

---

* DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

Comm'n, *Guidelines Manual* § 2K2.1(a)(7) (1994). The court increased the base level by 6 because the offense involved more than 50 firearms, *see id.* § 2K2.1(b)(1)(F), and by 4 more because Thomas "transferred firearms with reason to believe that they would be used in connection with another felony offense." *See id.* § 2K2.1(b)(5). The court reduced the offense level by 2 for acceptance of responsibility. *See id.* § 3E1.1(a). It denied an additional 2 point reduction for Thomas' having been a minor participant, finding that he was not. *See id.* § 3B1.2(b). Finally, the court declined to depart downwardly from the guideline range for Thomas' role in the community and his being a good family man, because "there has to be more than just being a good family man and being a person who participates in activities in their community."

These calculations produced an offense level of 20, with a guideline range of 33 to 41 months imprisonment. The court sentenced Thomas to 33 months.

## II.

Section 2K2.1(b)(5) of the Guidelines provides for a four-level enhancement of offense level

[i]f the defendant ... possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense.

*Id.* § 2K2.1(b)(5). Application Note 18 to that section states that "[a]s used in subsection[ ] (b)(5) ... 'another felony offense' ... refer[s] to offenses other than explosives or firearms possession or trafficking offenses." *Id.* § 2K2.1, Application Note 18.

Subsection (b)(5) was added to the Guidelines in 1991 to "reflect increased concern about firearms, crimes of violence, and drug offenses. Needless to say, the unlawful use or possession of firearms represents an ever increasing assault on public safety." *United States v. Condren,* 18 F.3d 1190, 1198 (5th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 161, 130 L.Ed.2d 99 (1994). Since, as the district court found, the conspiracy for which Thomas was convicted continued into 1992,

subsection (b)(5) applied. U.S. Sentencing Comm'n, *Guidelines Manual* § 1B1.11 & Application Note 2 (1994); *United States v. Gigante,* 39 F.3d 42, 50 (2d Cir.1994).

In ruling that Thomas "transferred firearms with reason to believe that they would be used in connection with another felony offense," the district court explained:

In making that determination, it cannot be ignored, as has been pointed out here, that there were over 128 of these handguns sold to these three individuals. 87 of the 93 guns that you sold during that period of time were sold to these three people.

Furthermore, the evidence was that you knew at some point that Mr. Velez, at least, was not a Vermont resident, that he was from New York City. I find it hard to believe, Mr. Thomas, that you had no intimation or no reason to believe that these guns weren't going to be used in some illegal manner.

Furthermore, the evidence that you falsified your records, indicates to me that, again, you had some knowledge that there were—there was something going on with these guns once they left your establishment which would—which would make them being used in illegal activity.

The guidelines indicate that the plain meaning should be applied in this case. And it is my finding that the plain meaning indicates that you had reason to believe that these firearms could be used in another illegal activity.

■ A. We review the district court's reason-to-believe finding for clear error. *United States v. Dodge,* 61 F.3d 142, 146 (2d Cir.), *cert. denied,* — U.S. —, 116 S.Ct. 428, 133 L.Ed.2d 343 (1995). There was sufficient evidence to support the finding that Thomas had reason to believe that the guns would be used in connection with another felony offense, and that finding was not clearly erroneous.

■ As discussed in part I above, three men, at least one of whom was from New York City, repeatedly visited a small town in upstate New Hampshire, where they purchased a large number of handguns. In a

three-month period, they purchased 87 weapons, 50 of them in a single month. In a four-day period Thomas sold Velez 18 firearms. Almost all of the weapons he sold them were handguns, mainly low-grade, inexpensive, semi-automatic weapons. Many of them were of the same easily concealable make and model. The three purchasers returned regularly to Thomas' store to purchase the firearms, sometimes picking up weapons they had ordered on a previous visit for future delivery. Thomas knew that Velez was from New York City and transported the firearms back there. Thomas made false entries in the firearms records he was required to keep, in order to conceal his illegal transactions.

On these facts the district court was justified in concluding that Thomas had reason to believe that the guns would be used in committing other non-firearms felonies. There was no indication that the purchasers were gun collectors or planning to keep the guns for their personal use. The large number of guns involved, the types of weapons, and the unusual circumstances surrounding their purchase all indicated that the guns were being acquired for resale. Since Thomas was aware that Velez was from New York City, that was the obvious place of resale, and guns of that type and quality most probably would be sold there on the street. As a firearms dealer, Thomas had every reason to believe that the guns he sold these three purchasers would be used to commit other felonies after they had been resold on the streets of New York—as the record shows they were.

■■■■ "Section 2K2.1(b)(5) does not require knowledge of the specific offense to be committed," *id.,* nor does it require that it be the purchasers of the guns who commit the other felonies. *See, e.g., United States v. Cutler,* 36 F.3d 406, 408 (4th Cir.1994) (upholding enhancement where defendant sold guns to neighbor, who then "distributed [them] to drug abusers and dealers"); *United States v. Alers,* 852 F.Supp. 310, 314–15 (D.N.J.), *aff'd mem.,* 40 F.3d 1241 (3d Cir. 1994) (invoking enhancement where defendant transferred guns to illegal gun dealer who then distributed them "into the drug

underworld"). The focus of the guideline is on the use to be made of the guns, not on the identity of the user.

■■■■ Thomas attempts to segment the evidence into its separate components, such as the number of weapons and the circumstances of their purchase, and then argues that *no single item of evidence* is sufficient to support the "reason-to-believe" finding. In determining whether that finding was clearly erroneous, however, the evidence must be viewed in its totality, not its individual pieces. *See United States v. Shoulberg,* 895 F.2d 882, 886 (2d Cir.1990) (sentencing court "properly refused to view [the facts] piecemeal rather than in conjunction"); *see also United States v. Ragosta,* 970 F.2d 1085, 1090 (2d Cir.) ("[A] reviewing court must consider pieces of evidence not in isolation but in conjunction."), *cert. denied,* 506 U.S. 1002, 113 S.Ct. 608, 121 L.Ed.2d 543 (1992). Thus viewed, the evidence is sufficient to support the finding of reason to believe.

B. Thomas contends, however, that in enhancing his sentence the district court used an incorrect legal standard for determining that he had reason to believe. According to Thomas, the district court used a strict liability or negligence standard rather than an actual subjective belief standard, which Thomas argues § 2K2.1(b)(5) embodies.

Like the Seventh Circuit in *United States v. Gilmore,* 60 F.3d 392 (7th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 434, 133 L.Ed.2d 348 (1995), we need not here decide whether " 'reason to believe' is something of which the defendant is conscious, rather than, as in the tort law of negligence, something of which a reasonable person would be conscious whether or not *this* person, who may have a defective understanding, is conscious of it." *Id.* at 394. There is no indication that the district court based its finding of reason to believe on a strict liability or negligence theory. To the contrary, as we have shown, the district court's finding rests upon adequate evidence that Thomas had a subjective reason to believe that the firearms would be used to commit another felony.

Thomas relies on *United States v. Pantelakis,* 58 F.3d 567 (10th Cir.1995), to support

his claim that the district court improperly applied a reasonable person/negligence standard rather than a subjective belief standard. That case does not aid Thomas.

Pantelakis, an 18–year–old member of a gang, was convicted of unlawful possession of an unregistered firearm. The district court applied the four-level enhancement under § 2K2.1(b)(5), on the ground that the evidence showed that Pantelakis "had 'knowledge, intent, or reason to believe' that he would use the gun in connection with another felony offense." *Id.* at 568. The court of appeals held the enhancement was improperly applied because

> [t]he unrefuted, uncontradicted testimony of Mr. Pantelakis is that he purchased the weapon solely for self-protection purposes. The evidence shows that Mr. Pantelakis had good reason to fear for his personal safety, as he had already been attacked and stabbed by rival gang members. . . .
>
> . . . .
>
> There is simply not a shred of evidence that Mr. Pantelakis intended to seek out the rival gang members and use his firearm preemptively.

*Id.*

*Pantelakis* is irrelevant to the issue in this case. There was no evidence that Pantelakis' firearm was likely to be used to commit a felony. In the present case, in contrast, there was sufficient evidence to support the district court's finding that Thomas had reason to believe that the guns he sold would be used to commit other non-firearm felonies.

C. Thomas argues that the district court engaged in improper "double counting" by considering the number of guns involved both in enhancing the offense level because it involved more than 50 guns and in applying the "reason-to-believe" enhancement.

■ The Guidelines' "General Application Principles" provide in § 1B1.1, Application Note 4, that "[t]he offense level adjustments from more than one specific offense characteristic within an offense guideline are cumulative (added together) unless the guideline specifies that only the greater (or greatest) is to be used." U.S. Sentencing Comm'n,

*Guidelines Manual,* § 1B1.1, Application Note 4 (1994). Nothing in either the guideline specifying adjustments to reflect the number of guns involved, *id.* § 2K2.1(b)(1), or § 2K2.1(b)(5) indicates that only the greater of these two adjustments is to be used. "A district court does not engage in impermissible double-counting when it considers a single act that 'is relevant to two dimensions of the Guidelines analysis.'" *United States v. Then,* 56 F.3d 464, 466 (2d Cir.1995) (same conduct resulted in adverse §§ 3C1.1 and 3E1.1 findings) (quoting *United States v. Campbell,* 967 F.2d 20, 25 (2d Cir.1992) (no improper double counting resulted from using previous felony to increase both criminal history category and offense level)).

■ In the present case the use of the number of guns involved in imposing the two enhancements implicated "different dimensions of the Guidelines analysis" and thus the adjustments were properly treated as cumulative. The enhancement because the offense involved more than 50 guns related to the characteristics of the offense. The reason-to-believe enhancement related to the characteristics of the offender. The district court did not engage in improper double counting when it relied upon the large number of guns Thomas had sold as a factor showing Thomas' "reason to believe" the guns would be used in committing other offenses.

## III.

Guideline § 3B1.2(b) provides for a two-level downward adjustment "[i]f the defendant was a minor participant in any criminal activity." U.S. Sentencing Comm'n, *Guidelines Manual* § 3B1.2(b) (1994). Application Note 3 to this provision states that "a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* § 3B1.2(b), Application Note 3.

In denying Thomas' request for a two-level downward adjustment as a minor participant, the district court stated:

> I do not find in this case that you were a minor participant. Under the caselaw,

specifically, the case cited by your counsel and by the government, the *Shenobie [Shonubi]* case, it does not appear that your participation can be—again using a common sense and a plain meaning interpretation, could be minor; that you, in fact, were the one—were the one who initiated the start of the travel of these guns from Vermont to other places, particularly New York, where they were used or have been used in major crimes.

And I don't think that, again, the fact that there were so many guns sold over such a short period of time to so few individuals justifies a reduction because you were a minor participant.

 We review the district court's finding that a defendant was not a minor participant under the clearly-erroneous standard. *See United States v. Soto,* 959 F.2d 1181, 1187 (2d Cir.1992) ("A defendant who claims minor participation must establish by a preponderance of the evidence that he or she is entitled to a reduction due to his or her reduced level of culpability. A district court's finding as to a defendant's role in a criminal activity is a factual determination that will not be overturned unless 'clearly erroneous.' ") (citation omitted); *cf. United States v. Shonubi,* 998 F.2d 84, 90 (2d Cir. 1993). A defendant seeking a downward adjustment under this paragraph

> must prove his or her reduced culpability by a preponderance of the evidence. A sentencing court's assessment of the defendant's role in criminal activity is highly fact-specific and depends upon "the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise."
>
> . . . .
>
> . . . It is not defendant's exact role or status in the criminal activity that necessarily decides this question; rather, it is an assessment of defendant's culpability in the context of all the circumstances.

*Id.* (citations omitted).

 Even "[t]he fact that [a defendant] played a minor role in his offense 'vis-a-vis the role of his co-conspirators' is insufficient, in and of itself, to justify a two level reduction; [a defendant] must have similarly played a minor role in comparison to the average participant in [a] crime." *United States v. Ajmal,* 67 F.3d 12, 18 (2d Cir.1995).

 Thomas has not shown that he played only a minor role in the offense. To the contrary, as the district court noted, he played an important and significant part in the conspiracy to violate federal firearms laws to which he pleaded guilty. As a federally licensed dealer, he was able to, and did, supply all of the guns involved. Without his participation there would have been no transfer and subsequent sale of the weapons. Moreover, he maintained the false records that were designed to conceal the illegal gun sales. The fact that he did not himself transport any of the guns to New York City did not make his participation in the offense "minor." *Cf. United States v. Lowery,* 60 F.3d 1199 (6th Cir.1995) (defendant was not a minor participant in bank robbery although she did not use a weapon or enter the bank). The district court's finding that his participation in the offense was not minor is not clearly erroneous.

## IV.

 The district court denied Thomas' requested downward departure from the guideline range to reflect his participation in community affairs and his being a good family man, on the ground that those factors did not justify a departure.

When a district court has discretion to depart from the sentencing range prescribed by the Guidelines and has declined to exercise that discretion in favor of a departure, its decision is normally not appealable. However, if the district court has declined to depart relying on the mistaken belief that it lacked authority to depart, its decision is appealable. We will not normally infer that the sentencing court believed it had no authority to depart where it gave no indication that it had such a belief or where it simply expressed sympathy for the defendant but found the circumstances not to warrant departure.

*United States v. Ekhator,* 17 F.3d 53, 55 (2d Cir.1994) (citations omitted).

In the present case, the district court explicitly stated that its refusal to depart was discretionary. After the court had announced the sentence, the following colloquy occurred between the prosecutor and the court:

[PROSECUTOR:] And, lastly, your Honor, you mentioned in discussing the downward departure issue toward the close of your analysis, you said that you do not find and cannot find circumstances in this case warranting a departure.

For the purposes of the record, may we inquire as to whether you meant that you could not legally do it or whether you were exercising your discretion?

THE COURT: No. I'm exercising my discretion under the guidelines not to downward depart.

Accordingly the court's refusal to depart downwardly is not reviewable.

At oral argument Thomas suggested that even though the district court's refusal to depart was discretionary, we may review that action for abuse of discretion. He cited no case, and we know of none that would permit such review, and we decline to engraft that exception on the well settled principle barring review. *United States v. Sharpsteen,* 913 F.2d 59, 62 (2d Cir.1990) ("It is settled law in this circuit that a defendant generally may not appeal from a district court's decision not to depart downwardly from the applicable Guidelines range because the decision is 'inherently discretionary' and because 'Congress did not intend to provide appellate review of sentences that are within the Guidelines correctly applied and are not illegal.'") (quoting *United States v. Colon,* 884 F.2d 1550, 1554 (2d Cir.), *cert. denied,* 493 U.S. 998, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989)). Such an exception would engulf the rule itself, since any challenge to a refusal to depart downwardly may be framed as an alleged abuse of discretion.

## CONCLUSION

The sentence is affirmed.