**UNITED STATES of America,**
**Appellant,**

v.

**Donald P. CARPENTER,**
**Defendant–Appellee.**

No. 00–1248.

United States Court of Appeals,
Second Circuit.

Submitted Dec. 19, 2000.

Decided June 8, 2001.

Amended July 19, 2001.

Philip L. Weinstein, The Legal Aid Society, Federal Defender Division Appeals Bureau, New York City, for Appellee.

Before: MESKILL, LEVAL and CALABRESI, Circuit Judges.

MESKILL, Circuit Judge:

The government appeals from a judgment of conviction entered on March 10, 2000 in the United States District Court for the Northern District of New York, Scullin, *C. J.*, following defendant-appellee Donald Carpenter's plea of guilty to one count of conspiracy to steal firearms from a licensed firearms dealer, in violation of 18 U.S.C. §§ 371 and 924(m). On appeal, the government argues that the district court's determination that Carpenter was entitled to a three level mitigating role adjustment under U.S.S.G. § 3B1.2 was the "result of an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(b)(2). We have jurisdiction pursuant to 18 U.S.C. § 3742(b)(2) and 28 U.S.C. § 1291. Because we find the government's arguments persuasive, we vacate the judgment as to the sentence only and remand this case to the district court with instructions to resentence Carpenter in accordance with this opinion.

## BACKGROUND

This appeal arises out of defendant-appellee Donald Carpenter's plea of guilty to conspiring to steal firearms from two Dick's Clothing and Sporting Goods (Dick's) stores located near Syracuse, New York. During the period on or about September 1994 through March 1997,[1] defendant-appellee Donald Carpenter and

Daniel J. French, United States Attorney, Elizabeth S. Riker, Assistant United States Attorney, Northern District of New York, Syracuse, NY, on the brief, for Appellant.

Walter N. Munson, Syracuse, NY, for Appellee.

1. These dates are derived from the information charging Carpenter and the plea agreement signed by Carpenter, both dated July 2, 1998. However, a summary prepared by the Bureau of Alcohol, Tobacco and Firearms documenting the disposition of the firearms stolen by Carpenter and Wise from Dick's indicates that the firearm thefts began as early as October 1993.

Marty Wise, a sales associate at Dick's, participated in a conspiracy to steal firearms from Dick's, a federally licensed firearms dealer. Their scheme, as outlined below, involved fifty firearm thefts, which netted a total of forty-two separate firearms during the two and one-half year period the conspiracy was in existence.

The mechanics of the conspiracy's firearm theft and resale scheme are not complicated. Wise initially approached Carpenter with the plan to steal firearms from Dick's. As part of their scheme, Wise would contact Carpenter and inform him when a specific theft should occur. When Carpenter arrived at Dick's, Wise handed Carpenter a pre-selected firearm. Carpenter then completed the Alcohol, Tobacco and Firearms (ATF) Form 4473 transferring the firearm from Dick's to himself, and Wise signaled to the cashier that Carpenter "was all set" and could leave without paying for the firearm. On each executed Form 4473, Carpenter signed as the buyer and Wise signed as the seller on behalf of Dick's. All of the firearm thefts occurred in roughly the same manner.

Carpenter was in charge of disposing of the firearms stolen from Dick's. As a partner in a business named "The Gun Room," which possessed a federal firearms license, Carpenter was able regularly to acquire firearms and subsequently resell them to Dick's and other businesses. Although The Gun Room's firearms license expired in August 1994, Carpenter nevertheless continued to acquire firearms from Dick's until March 1997, when Dick's first became aware of the thefts.

The thefts were discovered by David Murano, the store manager at Dick's, after Carpenter was unable to produce the sales receipt for one of the firearms he allegedly purchased from Dick's. After being confronted by Murano, Carpenter confessed to his and Wise's involvement in numerous firearm thefts from Dick's. A few months later, Carpenter and Wise made a similar confession to ATF agents. Based on these confessions, the ATF conducted a full-scale audit of Dick's records to determine how many firearms were stolen by Carpenter and Wise. The ATF audit revealed that between October 1993 and March 1997, the period the conspiracy was active, Carpenter and Wise engaged in fifty separate firearm thefts from Dick's, netting a total of forty-two separate firearms.[2] Of these fifty firearms, fifteen were resold by Carpenter to Dick's and fifteen were given to Wise. Carpenter resold an additional eleven firearms as follows: four to Gem Sports, a sporting goods store; four to Steve Underwood, Carpenter's accountant; one to Krajacic, Carpenter's employer; one to an individual named "Scott"; and one to an unknown gun dealer. One firearm was subsequently purchased by Carpenter. An additional eight firearms were stolen by Carpenter and Wise, but ATF agents were unable to track the whereabouts of these firearms or the amount of proceeds generated from their resales.

The proceeds from the resale of the forty-two firearms accounted for by Carpenter were allocated as follows: Wise kept the proceeds from nineteen guns; Carpenter kept the proceeds from nineteen guns; Wise and Carpenter split the proceeds from three guns; and one firearm actually was purchased by Carpenter.

On July 2, 1998, Carpenter pleaded guilty to an information charging him with one count of conspiring to steal firearms from a licensed firearms dealer in violation

---

**2.** The ATF audit revealed that eight of the firearms were stolen, resold, and stolen again from Dick's on multiple occasions.

of 18 U.S.C. §§ 371 and 924(m). The district court held numerous hearings in connection with Carpenter's sentencing. During the first hearing, which occurred on June 2, 1999, the mitigating role adjustment was initially raised by Carpenter and the district court stated that it did not believe that such an adjustment was "appropriate." Carpenter also raised the issue of a possible departure pursuant to U.S.S.G. § 5K2.16 on the ground that he had voluntarily disclosed the firearm thefts to Murano, the store manager at Dick's, and to law enforcement authorities. The government opposed such a departure, arguing that Carpenter did not confess his and Wise's role in the firearm thefts until after being confronted by Murano and ATF agents. Concluding that the question whether Carpenter voluntarily disclosed the thefts to Murano was "a factual issue," the district court granted Carpenter's request for a hearing.

On June 10, 1999, the district court held a second hearing in connection with Carpenter's request for a departure under section 5K2.16, during which Carpenter testified. Carpenter's testimony did not, however, address his role in the conspiracy vis-a-vis Wise, his co-conspirator in the firearm thefts. At the conclusion of that hearing, the district court ordered that the hearing be continued to allow Murano to testify.

On March 3, 2000, the district court held a third hearing during which Murano testified. Following that hearing, the district court notified the parties by letter that it planned "to revisit the issue of [Carpenter's] role in the offense at sentencing," which it scheduled for March 7, 2000. At sentencing, the district court heard extensive argument from both parties on the issue of whether Carpenter was entitled to a mitigating role adjustment. The district court then reduced Carpenter's base offense level by three levels pursuant to U.S.S.G. § 3B1.2 for his role in the firearm theft conspiracy. The district court further held that although it was "close," a downward departure under section 5K2.16 was not appropriate because Carpenter voluntarily disclosed the thefts only after he was confronted by Murano and ATF agents.

The base offense level for Carpenter's offense was twelve. Because the offense involved 25–49 firearms, the offense level was increased by five levels.[3] *See* U.S.S.G. § 2K2.1(b). The district court then departed downward three levels for a mitigating role adjustment, *see* U.S.S.G. § 3B1.2, and two levels for acceptance of responsibility. *See id.* at § 3E1.1. This resulted in a total offense level of 12. This offense level, combined with a criminal history category of I, resulted in a guideline imprisonment range of 10 to 16 months. This placed Carpenter in Zone C of the Sentencing Table, qualifying him for a "split sentence," under which Carpenter could satisfy one half of his minimum term of imprisonment by community confinement or home detention. *See* U.S.S.G. § 5C1.1(d). Exercising its discretion under section 5C1.1(d), the district court sentenced Carpenter at the lowest end of that range, and ordered him to serve a term of imprisonment of five months, followed by five months in home detention. The district court also ordered Carpenter to pay restitution in the amount of $17,975.04. The district court entered judgment to

---

**3.** At sentencing, the government agreed that Carpenter should be sentenced based on the number of separate firearms stolen rather than the total number of thefts, resulting in an offense involving 25–49 firearms. *See* U.S.S.G. § 2K2.1(b). Given the government's position, we express no view about whether section 2K2.1(b) should be applied based on the number of separately identifiable firearms or the total number of firearm thefts.

that effect on March 10, 2000. Wise, who also pleaded guilty to one count of conspiracy to steal firearms from a licensed firearms dealer, was sentenced to a term of imprisonment of fifteen months and ordered to pay restitution in the amount of $18,975.04.

On March 30, 2000, the government filed its notice of appeal, challenging the district court's grant of a mitigating role adjustment to Carpenter. Carpenter's brief opposing the government's appeal was not received until May 3, 2001, and we have delayed reaching a decision to allow consideration of that brief.

## DISCUSSION

On appeal, the government argues that the district court misapplied U.S.S.G. § 3B1.2 as a matter of law when it held that Carpenter was entitled to a mitigating role adjustment on the ground that his conduct was less culpable than that of Wise, his co-conspirator. We agree that the district court erred.

### A. *Standard of Review*

We review *de novo* a district court's legal interpretation and application of the Sentencing Guidelines. *See United States v. Napoli,* 179 F.3d 1, 6 (2d Cir. 1999), *cert. denied,* 528 U.S. 1162, 120 S.Ct. 1176, 145 L.Ed.2d 1084 (2000); *United States v. Zagari,* 111 F.3d 307, 323 (2d Cir.1997). Specifically, "[w]e review *de novo* the district court's legal conclusion as to whether the circumstances constitute 'minimal' or 'minor' participation." *United States v. Gaston,* 68 F.3d 1466, 1468 (2d Cir.1995) (per curiam). We review factual findings underlying the district court's application of the Sentencing Guidelines for clear error, "giv[ing] due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e); *see also United States v. Morales,* 239 F.3d 113, 117 (2d Cir.2000); *United States v. Lewis,* 93 F.3d 1075, 1079 (2d Cir.1996). In applying these standards, we are mindful that "[a] sentencing court's assessment of the defendant's role in criminal activity is highly fact-specific and depends upon the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *United States v. Shonubi,* 998 F.2d 84, 90 (2d Cir.1993) (internal quotation marks omitted). The defendant bears the burden of establishing by a preponderance of the evidence that he is entitled to a mitigating role adjustment under section 3B1.2 of the Sentencing Guidelines. *See United States v. Castaño,* 234 F.3d 111, 113 (2d Cir.2000).

### B. *Reduction for Role in the Offense*

Section 3B1.2 of the Sentencing Guidelines provides for a four-level downward adjustment if the defendant was a "minimal participant" in criminal activity, and a two-level downward adjustment where the defendant was a "minor participant." The commentary to the Guidelines provides that a "minimal role" adjustment applies to a defendant who is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, comment. (n.1). "Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." *Id.* The Guidelines make clear that the "minimal role" adjustment should be used "infrequently." *Id.* § 3B1.2, comment. (n.2); *see also United States v. Lopez,* 937 F.2d 716, 727 (2d Cir.1991).

In comparison, a "minor role" adjustment applies to "any participant who is less culpable than most other participants,

but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.3). The Guidelines further provide that a mitigating role adjustment is appropriate if the defendant is "substantially less culpable than the *average participant.*" *Id.* § 3B1.2, comment. (background) (emphasis added); *cf. Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline."). If the "defendant falls in between being classified as a 'minimal participant' and a 'minor participant,'" he is entitled to a three-level downward adjustment. *United States v. Pitre,* 960 F.2d 1112, 1127 (2d Cir.1992); *see also* U.S.S.G. § 3B1.2.

On numerous occasions we have reiterated that "[a] reduction [pursuant to U.S.S.G. § 3B1.2] will not be available simply because the defendant played a lesser role than his co-conspirators; to be eligible for a reduction, the defendant's conduct must be 'minor' or 'minimal' as compared to the average participant in such a crime." *United States v. Rahman,* 189 F.3d 88, 159 (2d Cir.1999) (per curiam), *cert. denied,* 528 U.S. 1094, 120 S.Ct. 830, 145 L.Ed.2d 698 (2000); *see also Castaño,* 234 F.3d at 113; *United States v. Neils,* 156 F.3d 382, 383 (2d Cir.1998) (per curiam) ("Under U.S.S.G. § 3B1.2, the district court is required to gauge the appellant's culpability relative to the elements of the offense of conviction as well as in relation to the co-conspirators."); *United States v. Ajmal,* 67 F.3d 12, 18 (2d Cir.1995); *United States v. Pena,* 33 F.3d 2, 3 (2d Cir.1994); *Lopez,* 937 F.2d at 728. Accordingly, the fact that a defendant played a minimal or minor role in his offense "vis-a-vis the role of his co-conspirators is insufficient, in and of itself, to justify a [mitigating role] reduc-

tion." *Ajmal,* 67 F.3d at 18 (internal quotation marks omitted); *see also United States v. Martin,* 78 F.3d 808, 814 (2d Cir.1996).

The rationale for such a rule is self-evident. As we stated in *Neils,* "[i]f participation in the offense were measured solely in relation to the co-defendants, the anomaly would arise that a deeply involved participant would be rewarded with a downward adjustment, just because his co-defendants were even more culpable." 156 F.3d at 383; *see also Pena,* 33 F.3d at 3 ("Permitting the culpability of co-perpetrators alone to determine the adjustment for role in the offense for all members of a criminal undertaking would ... subject[ ] defendants who had engaged in identical criminal conduct to different sentences."); *Lopez,* 937 F.2d at 728. Further, such a result runs contrary to "the statutory purposes of sentencing," which are aimed at "reduc[ing] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct." *United States v. Sentamu,* 212 F.3d 127, 134 (2d Cir. 2000) (internal quotation marks omitted).

The government argues that the district court's decision to grant Carpenter a three-level mitigating role adjustment was "in conflict with established Second Circuit precedent." Our resolution of the government's appeal requires us to analyze the basis of the district court's determination.

In ruling that Carpenter's base offense level should be reduced by three levels pursuant to section 3B1.2 for his role in the conspiracy, the district court found that

[Carpenter's] role in the offense is much less culpable than that of Marty Wise, the co-defendant. It's clear from the record that Wise initiated the offense and recruited [Carpenter] to take part in

the thefts and that he was the one that had unlimited access to the guns, decided which guns would be stolen, when the thefts would take place, et cetera. Wise used [Carpenter] and four other individuals to accomplish these thefts and reaped the most from the crimes. In addition, although it's not a consideration to make as [an] adjustment, the Court also notes that [Carpenter] has been forthright and has accepted responsibility and has assisted the Government to the best of his ability in the investigation [of] this offense.

■ Our review of the totality of the district court's statements indicate that its decision to grant Carpenter a three-level mitigating role adjustment was based *"solely* upon the relative culpability of [Carpenter] and his co-conspirator[ ]." *Ajmal,* 67 F.3d at 18. Under our well-settled precedent, a finding that Carpenter was less culpable than Wise, his co-conspirator, is an impermissible basis, in and of itself, for granting a downward departure under section 3B1.2. *See Neils,* 156 F.3d at 383 ("To the extent that appellant argues that he is entitled to a reduction in the offense base level under U.S.S.G. § 3B1.2 solely upon a finding that he is less culpable than the co-defendants, he is wrong."); *Martin,* 78 F.3d at 814; *Ajmal,* 67 F.3d at 18 ("To the extent that the district court based its determination *solely* upon the relative culpability of [the defendant] and his co-conspirators, it misconstrued the law."); *Pena,* 33 F.3d at 3. Because the district court compared Carpenter's role to that of Wise, rather than to the *average* participant in a similar firearm theft conspiracy, the sentence imposed by the district court must be vacated.

The government next argues that Carpenter's role in the conspiracy and his knowledge of the scope and structure of the conspiracy render him ineligible as a matter of law for a mitigating role adjustment under U.S.S.G. § 3B1.2. Thus, the government asks that we decide this question in the first instance. In response, Carpenter concedes that "the district court seemingly employed the wrong legal standard," but asks that we remand the matter to the district court for additional factfinding because "[t]here are sufficient record facts that support the same [mitigating role] adjustment with the application of the correct standard." We disagree. Because the relevant facts on this issue are clear from the record, we choose to decide the question of Carpenter's entitlement to a mitigating role adjustment in the first instance, rather than remand that determination to the district court for additional factfinding. *See, e.g., Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith,* 232 F.3d 153, 161 (2d Cir.2000) (citing *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank & Trust Co.,* 93 F.3d 1064, 1072 (2d Cir.1996) ("An appellate court has the power to decide cases on appeal if the facts in the record adequately support the proper result or if the record as a whole presents no genuine issue as to any material fact. Thus, if we find that a party must prevail as a matter of law, a remand is unnecessary.") (internal quotation marks and citations omitted)); *Reid v. Senkowski,* 961 F.2d 374, 377 (2d Cir.1992) (per curiam).

■ Carpenter's active involvement in stealing the firearms from Dick's and reselling them to various third parties confirms that "he played an important and significant part in the conspiracy to violate federal firearms laws to which he pleaded guilty." *Martin,* 78 F.3d at 814; *see also United States v. Gomez,* 103 F.3d 249, 255 (2d Cir.1997) (holding that the record "amply support[s] a finding that [the defen-

dant] was central to both gun transactions"). Indeed, at sentencing Carpenter conceded that "there's no question that he had a very significant role" in the conspiracy. As a partner in a business that was a federally licensed dealer, Carpenter was able to regularly purchase and transfer firearms without drawing suspicion. This fact was critical to the success of the conspiracy. *See, e. g., Martin,* 78 F.3d at 814 (defendant's status as a federally licensed firearms dealer facilitated the transfer and sale of firearms). Further, Carpenter falsely executed the ATF forms that were designed to conceal the thefts of the firearms. Given these facts, we conclude that Carpenter possessed an intimate "knowledge or understanding of the scope and structure of the enterprise" for which he pleaded guilty. U.S.S.G. § 3B1.2, comment. (n.1); *see also United States v. La-Valley,* 999 F.2d 663, 665 (2d Cir.1993) ("[A] lack of knowledge or understanding is essential to a finding of minimal role and is a relevant factor to be considered in reaching a finding of minor role.") (internal citation omitted).

The fact that Wise recruited Carpenter for the *first* of fifty firearm thefts does not render Carpenter an unwitting participant in the two and one-half year conspiracy during which he actively and systematically stole firearms and illegally resold them for personal profit. This is not a situation involving the isolated theft of a single firearm; instead, this case involved a scheme designed to deal in stolen firearms. The continuing nature of the conspiracy, coupled with Carpenter's repeated involvement in the firearm thefts and resales, further render Carpenter ineligible for a mitigating role adjustment. *See Gaston,* 68 F.3d at 1468.

The "contested facts" cited by Carpenter—which relate principally to Carpenter's role in the conspiracy relative to Wise and the other co-conspirators—are not rel-evant and, thus, do not alter the outcome of the present appeal. Further, even if we accept as true the facts alleged by Carpenter in his brief, Carpenter still would not be entitled to a mitigating role adjustment based on the reasons we previously explained.

Finally, Carpenter argues, as he did at sentencing, that he is entitled to a mitigating role adjustment because the firearms were not used for unlawful purposes. Specifically, Carpenter contends that

> the firearms [Carpenter] obtained were used primarily by him for hunting and target shooting. [Carpenter] did not sell the guns simply to make money. Rather, he sold guns when he need[ed] to buy a new gun for his collection. Unlike many, if not most[ ] people involved in gun thefts, Carpenter did not knowingly act as a conduit for supplying weapons in reckless disregard of whether they were to be used in the commission of other illegal acts.

Even accepting Carpenter's facts as true, they are irrelevant to our determination of whether Carpenter is entitled to a mitigating role adjustment and, specifically, to the issue of Carpenter's knowledge of the scope and structure of the conspiracy and the scope of his role within that conspiracy. We note that Carpenter raised this argument at sentencing, and the district court did not refer to this factor in its decision to award Carpenter a mitigating role adjustment. As such, it is reasonable to infer that the district court rejected this argument as a permissible basis for granting Carpenter a mitigating role adjustment. Accordingly, Carpenter's version of his motives in engaging in the firearm thefts does not modify our previous conclusion that Carpenter played a central role in both the theft and resale of the firearms from Dick's sufficient to preclude a mitigating role adjustment under section 3B1.2.

## CONCLUSION

The judgment imposed by the district court is vacated as to the sentence only and the matter is remanded to the district court with instructions to resentence Carpenter at a base offense level of 15 and a criminal history category of I, which carries a sentencing range of 18–24 months. *See* 18 U.S.C. § 3742(f)(1); Fed.R.Crim.P. 35(a). If, however, the district court determines, upon motion by either party, that Carpenter is entitled to an additional one level reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b), then Carpenter shall be sentenced at a base offense level of 14 and a criminal history category of I, which carries a sentencing range of 15–21 months.

The mandate shall issue forthwith.