**UNITED STATES of America,**
**Appellee,**

v.

**Jorge GARCIA, also known as Piasa,**
**Defendant–Appellant,**

Alex Restrepo, also known as Carlos Rodriguez, also known as Jose, also known as O.R., also known as Oscar, Nelson Baez, also known as Giovanni, also known as Nano, also known as Patrico Baez, also known as Patricio Bermo, Edison Santiago Cordova; Nicholas Coronel, also known as Javier, also known as Estaban Maldonado, Carlos Gonzalez, also known as Ernesto, also known as Ernesto, also known as Nestico, also known as Pedro Cabrera, Pepe Mirand, also known as Conejo, also known as Mauricio, Paola Restrepo, also known as Petronila Maria Santander, Julian Tamayo, Mabel Fernandez, Jose Ramos, Defendants.

No. 03–1599.

United States Court of Appeals,
Second Circuit.

Nov. 5, 2004.

Lawrence D. Gerzog, Law Office of Lawrence D. Gerzog, New York, N.Y., for Defendant–Appellant.

Helen V. Cantwell, Assistant United States Attorney (David Raskin, Assistant United States Attorney, on the brief), for David N. Kelley, United States Attorney for the Southern District of New York, for Appellee.

Present: WINTER, KATZMANN, and RAGGI, Circuit Judges.

### SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be and hereby is **AFFIRMED.**

Defendant-appellant Jorge Garcia appeals from the September 25, 2003 judgment of the United States District Court for the Southern District of New York (Scheindlin, *J.*), convicting him, following his guilty plea, of conducting, and conspiring to conduct, the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. §§ 1962(c) & (d), and sentencing him to a term of 292 months' imprisonment, to be followed by five years' supervised release, and a $200

special assessment. We assume the parties' familiarity with the underlying facts and procedural history of the case. For the reasons that follow, we affirm.

■ Garcia first argues that the district court erred in applying U.S.S.G. § 2A1.1, the section applicable to first-degree murder, because he withdrew from the predicate conspiracy to rob American Sirloin Meat & Poultry Company (the "Meat Company")—by leaving the scene of the crime and advising his co-conspirators not to proceed with the offense—before the robbery or felony murder transpired. We have held that "resignation from a criminal enterprise, standing alone, does not constitute withdrawal as a matter of law." *United States v. Berger,* 224 F.3d 107, 118 (2d Cir.2000). Specifically, to withdraw from a conspiracy, we have required that "the defendant ... not take any subsequent acts to promote the conspiracy" and "not receive any additional benefits from the conspiracy." *Id; see also United States v. Eisen,* 974 F.2d 246, 269 (2d Cir.1992) (finding no withdrawal where the defendant resigned from a corrupt law firm but continued to receive a percentage of recoveries). As an initial matter, it is questionable that Garcia's actions, in essence, his flight from the scene of the crime, evidence the renunciation of a criminal partnership necessary to demonstrate withdrawal. In addition, however, Garcia admitted that, after the robbery and murder were perpetrated, he met with his co-conspirators and shared in the proceeds of the robbery. He therefore did not withdraw from the Meat Company predicate conspiracy. Accordingly, the district court did not err in applying § 2A1.1.

■ Garcia next argues that the district court committed plain error in failing *sua sponte* to grant an unrequested minor role adjustment in his Guidelines calculation pursuant to U.S.S.G. § 3B1.2(b). Because a defendant bears the burden of proving that he qualifies for such a mitigating role adjustment, *see United States v. Carpenter,* 252 F.3d 230, 234 (2d Cir.2001), a defendant who fails to request this consideration in the district court confronts a particularly high hurdle in arguing plain error on appeal, *see United States v. Thomas,* 274 F.3d 655, 667 (2d Cir.2001) (en banc) (stating and applying four-part plain error test). Garcia submits that his minor role was plainly demonstrated by trial testimony establishing that he was ordered around by other members of the conspiracy, and by his abandonment of the predicate conspiracy and advice to his co-conspirators that they do the same, before the robbery and murder took place. The mere fact, however, that Garcia took orders from his co-conspirators is not by itself sufficient to justify a minor role adjustment. *See United States v. Lopez,* 937 F.2d 716, 728 (2d Cir.1991) ("The intent of the Guidelines is not to 'reward' a guilty defendant with an adjustment merely because his coconspirators were even more culpable."). Nor did Garcia's flight from the scene of the Meat Company robbery or his attempt to abort the planned offense substantially reduce his culpability. As the district court found, Garcia's did not "turn back" from the Meat Company robbery "based on the realization that what he was doing was wrong," but rather out of fear that he might be caught. And, as addressed *supra,* Garcia did not actually withdraw from the robbery conspiracy but instead subsequently availed himself of its proceeds. Moreover, as the district court specifically noted at sentencing, Garcia was a "significant member" of the RICO conspiracy of conviction. He participated in over fifty robberies, including three of the four in which victims were either shot or killed. During these predicate crimes, he played virtually any role required to further the enterprise's criminal goals. He served as a look-out, get-away driver,

and vehicle blocker, but he also entered target apartments, carried firearms during robberies, and assaulted and threatened victims. His share of the enterprise proceeds approximated $200,000. The district court thus did not err in failing *sua sponte* to apply a minor role adjustment.

Finally, Garcia complains that he received ineffective-assistance of counsel in light of his counsel's failure to (1) contest application of U.S.S.G. § 2A1.1, (2) seek a role reduction under U.S.S.G. § 3B1.2(b), and (3) object to the testimony of Donald Pagani's family members at sentencing. We are mindful of the Supreme Court's counsel that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance." *Massaro v. United States,* 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). But where, as here, the factual record is "fully developed and resolution of the Sixth Amendment claim ... is beyond any doubt," we may decide the claim on the record before us. *United States v. Gaskin,* 364 F.3d 438, 468 (2d Cir.2004) (internal quotation marks omitted).

■ To overturn a conviction on the ground of ineffective assistance of counsel, a defendant must show both (1) that his "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Garcia cannot satisfy either prong of this stringent test. First, because as discussed *supra,* the district court's decisions to apply § 2A1.1 and to refrain from adjusting Garcia's sentence pursuant to § 3B1.2(b) were proper, the failure of Garcia's counsel to raise challenges with respect to these sections at sentencing was neither objectively

unreasonable nor prejudicial. In addition, under Rule 32 of the Federal Rules of Criminal Procedure, the victim's family members have a right to address the district court at sentencing. *See* Fed. R.Crim.P. 32(i)(4)(B)(ii). It was thus objectively reasonable for Garcia's counsel not to object to the testimony of Pagani's family members. Nor, in any event, was Garcia prejudiced by his counsel's decision in this regard, given that the district court calculated his Guidelines range before hearing from any family members, and even thereafter, sentenced him at the bottom of the applicable Guidelines' range. Garcia's ineffective-assistance of counsel claim therefore fails.

According, we **AFFIRM** the judgment of the district court. The mandate in this case will be held pending the Supreme Court's decision in *United States v. Booker,* —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004) and *United States v. Fanfan,* —— U.S. ——, 125 S.Ct. 12, 159 L.Ed.2d 838 (2004). Should any party believe there is a need for the district court to exercise jurisdiction prior to the Supreme Court's decision, it may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of this order that address Garcia's sentence until after the Supreme Court's decision in *Booker* and *Fanfan.* In that regard, the parties will have until 14 days following the Supreme Court's decision to file supplemental petitions for rehearing in light of *Booker* and *Fanfan.*