**UNITED STATES of America,**
**Appellee,**

v.

**Wilfredo VARGAS–NUNEZ,**
**Defendant–Appellant.**

**No. 04–1715–CR.**

United States Court of Appeals,
Second Circuit.

Nov. 12, 2004.

Timothy J. McInnis, New York, NY, for Appellant.

David Berardinelli, Assistant United States Attorney for the Southern District of New York (David N. Kelley, United States Attorney, David Burns, Karl Metzner, Assistant United States Attorneys), New York, NY, for Appellee.

Present: MESKILL, SACK, and B.D. PARKER, Jr., Circuit Judges.

## CORRECTED SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be, and it hereby is, AFFIRMED.

The appellant, Wilfredo Vargas–Nunez, appeals his sentence following his conviction on two counts of conspiracy to distribute and possess with intent to distribute cocaine. Nunez pleaded guilty to both counts and was sentenced, *inter alia*, to two concurrent terms of 108 months' imprisonment, the lower limit of the applicable range under the Federal Sentencing Guidelines.

On appeal, Vargas–Nunez contends, first, that the district court erred in not granting him a mitigating role adjustment, and, second, that the Supreme Court's decision in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), entitles him to a jury determination of the facts relevant to the mitigating role adjustment and of the quantity of drugs used to calculate his sentence.

The standard of review applicable to a district court's decision concerning a mitigating role adjustment is a matter of some dispute. *See, e.g., United States v. Burgos*, 324 F.3d 88, 91 n. 2 (2d Cir.2003). It is not necessary to resolve this issue here, however, because the district court did not err under any potentially applicable standard.

Vargas–Nunez argues that the district court failed to take sufficient account of his low-level participation and lack of authority in the charged conspiracies, and that he should have qualified as either a "minimal" or "minor" participant as those terms are defined in U.S.S.G. § 3B1.2. In either instance, the defendant must not simply be less culpable than his co-participants but also less culpable than "the average participant in such a crime." *United States v. Carpenter*, 252 F.3d 230, 235 (2d Cir.2001) (citation and internal quotation marks omitted). At oral argument, Vargas–Nunez's attorney suggested that this Court should only consider Vargas–Nunez's role in the charged conspiracies, and not his role relative to an abstract "average" narcotics conspirator.

As an initial matter, we are bound by this Court's precedent with regard to the qualifications for a mitigating role adjustment and cannot, ourselves, reconsider its merits. *See, e.g., id.; see also United States v. Neils*, 156 F.3d 382, 383 (2d Cir. 1998) (per curiam); *see generally Gelman v. Ashcroft*, 372 F.3d 495, 499 (2d Cir. 2004).

■ In any case, we find that Vargas–Nunez's repeated description of himself as a mere "courier" or "steerer" in the charged conspiracies is not supported by the record. Vargas–Nunez admits to performing multiple roles over the course of his involvement in the conspiracy. For approximately one month in early 2002, Vargas–Nunez rode in a car with co-conspirator Torres while Torres engaged in drug dealing. In the spring of 2002, Vargas–Nunez served as a telephone conduit, using Torres' cell phone and following Torres' instructions, and passed along information in code concerning the type, quantity, and price of drugs in prospective

transactions. Vargas–Nunez acted as Torres' representative on such phone calls while Torres was in the Dominican Republic. In June 2002, Vargas–Nunez acted as a money courier for a drug deal which involved a plan to deliver five kilograms of cocaine, of which three kilograms were actually purchased by a buyer for $70,000. While Vargas–Nunez may not have been a leader of the conspiracies, his involvement was indisputably integral and long-term. Indeed, his contention that he was ultimately forced out of the conspiracies—which he offers as evidence of his low rank—demonstrates that his participation was voluntary. Moreover, even assuming *arguendo* that Vargas–Nunez was no more than a "steerer," title alone is not determinative of culpability. *See, e.g., id.* at 384. In short, the district court relied on ample uncontested evidence in denying Vargas–Nunez a mitigating role adjustment.

Vargas–Nunez also argues that the district court's ruling conflicts with U.S.S.G § 2D1.1(a)(3) which, as amended, caps at thirty the maximum base offense level for defendants who receive mitigating role adjustments. The district court was, of course, in no way bound by § 2D1.1(a)(3), which by its plain terms applies only to those offenders who have *already* received a mitigating role adjustment. *See* U.S.S.G. § 2D1.1(a)(3).

■ Vargas–Nunez's final contention is that the Supreme Court's decision in *Blakely,* 124 S.Ct. at 2531, entitles him to a jury determination of the facts relevant to his request for a mitigating role adjustment, and of the quantity of drugs used to calculate his sentence under the Federal Sentencing Guidelines. *Blakely* itself, of course, made no determination regarding the Guidelines. *Id.* at 2538 n. 9. Even assuming its logic were to apply—a conclusion that is not at all clear, *see, e.g., United States v. Mincey,* 380 F.3d 102, 106 (2d Cir.2004) (per curiam)—it would not apply to Vargas–Nunez who, through his attorney, specifically accepted the findings of fact included in the Pre–Sentence Report. That report described the drug quantities on which his sentence was based. Vargas–Nunez cannot now use the uncertainty created by *Blakely* to seek a jury determination of facts he has long since acknowledged were true.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED. The mandate will be held pending the Supreme Court's decision in *United States v. Booker,* 375 F.3d 508 (7th Cir.), *cert. granted,* —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (2004) (mem.), and *United States v. Fanfan,* 2004 WL 1723114, 2004 WL 1723114, 2004 U.S. Dist. LEXIS 18593 (D.Me.2004), *cert. granted,* —— U.S. ——, 125 S.Ct. 12, 159 L.Ed.2d 838 (2004) (mem.). Should any party believe there is a special need for the district court to exercise jurisdiction prior to the Supreme Court's decision, the party may file a motion seeking issuance of the mandate in whole or in part. Although any petition for rehearing should be filed in the normal course pursuant to Rule 40 of the Federal Rules of Appellate Procedure, the court will not reconsider those portions of its opinion that address the defendant's sentence until after the Supreme Court's decision in *Booker* and *Fanfan.* In that regard, the parties will have until 14 days following the Supreme Court's decision to file supplemental petitions for rehearing in light of *Booker* and *Fanfan.*