**UNITED STATES of America, Appellant,**

v.

**Lloyd BRYSON; Rodney Joseph, Defendants–Appellees.**

**Docket No. 98–1195.**

United States Court of Appeals, Second Circuit.

Argued Oct. 22, 1998.

Decided Dec. 31, 1998.

Peter A. Norling, Assistant United States Attorney, Eastern District of New York, Brooklyn, New York, for Zachary W. Carter, United States Attorney for the Eastern District of New York (Timothy A. Macht, Assistant United States Attorney, of counsel), for Appellant.

William J. Stampur (Hurwitz, Stampur & Roth, New York, New York), for Defendant–Appellee, Lloyd Bryson.

Abraham L. Clott, the Legal Aid Society Federal Defender Division Appeals Bureau, for Defendant–Appellee, Rodney Joseph.

Before: NEWMAN, JACOBS, Circuit Judges, and TSOUCALAS, Judge.*

TSOUCALAS, Judge:

On March 5, 1998, defendants-appellees Lloyd Bryson and Rodney Joseph appeared for sentencing before the United States District Court for the Eastern District of New York (Weinstein, J.) following their pleas of guilty to a single count of conspiring to possess and distribute crack cocaine in violation of 21 U.S.C. § 846. At sentencing, the district court departed downward for Bryson to

---

* The Honorable Nicholas Tsoucalas, Senior Judge of the United States Court of International Trade, sitting by designation.

level 23 (from an original offense level of 31) and similarly reduced Joseph's adjusted offense level by 10 levels to 21 in light of alleged "extraordinary rehabilitation." Both defendants were sentenced to 60 months imprisonment, 10 years supervised release and a $50 special assessment. The government appeals, arguing that the sentencing court abused its discretion by departing downward because there was no evidence of extraordinary rehabilitation meriting downward departure.

## BACKGROUND

On February 17, 1994, police officers responded to a complaint that a burglary was in progress at an apartment in Staten Island. When the police arrived, they observed a shopping bag being thrown from the apartment's window. The police recovered the bag which contained 307 grams of crack cocaine in small plastic bags.

Defendants Bryson and Joseph barricaded themselves inside the apartment and for three hours ignored police commands to exit. When the standoff finally ended, the police entered the apartment and found a firearm, ammunition and two bags containing small ziplock bags identical to those enclosing cocaine base that had been recovered earlier. Bryson and Joseph were arrested, charged in state court and released on bail. A federal-state narcotics investigation ensued. In January of 1995, Bryson was arrested in connection with a "buy and bust" operation and has remained in custody since his arrest. On November 15, 1995, Joseph was also arrested by federal authorities, in connection with the 1994 offense and was released on bail. On June 13, 1996, both Bryson and Joseph pled guilty to the charge of conspiracy to possess with intent to distribute crack cocaine.

Bryson's presentence report ("PSR") depicted him as a 26 year-old male with a criminal record and virtually no employment history. The previous crimes listed in the PSR included possession of a loaded gun and forcible sexual abuse. Within months of his release from prison for these crimes, Bryson was arrested for the crime in this case. The PSR noted that Bryson "has not maintained any employment since 1992" and that he had been incarcerated most of the time since that date.

Joseph's PSR similarly described a 26 year-old male with a criminal history and an erratic employment history. Before dropping out of college, Joseph was arrested six times in addition to his arrest in this case. At age 19, he was arrested for possession of a handgun, after fleeing from police and resisting arrest. He received a one-year probationary term, which was revoked based on his failure to report to probation. While on probation, police discovered Joseph in an apartment with drugs. That case was conditionally discharged. Three weeks later, Joseph was observed carrying a distribution quantity of crack cocaine in small plastic bags. Joseph again was sentenced to probation, which he violated, serving six months in prison as a consequence. Prior to going to prison, and while still on probation, he was arrested for distributing crack cocaine. As a result of that violation of probation, Joseph was sentenced to community service. Joseph's final arrest was in June 1995, fourteen months after the offense in this case.

The PSR showed that Joseph had been employed since August 1995, six months after his arrest by state officials but before his federal arraignment, at a catering company operating out of Wagner College in Staten Island earning $200 per week. Prior to that, Joseph had been unemployed and supported by his parents.

## SENTENCING

### Bryson

In Bryson's case, there is no dispute that the applicable offense level is 31 with a range of imprisonment under the Sentencing Guidelines from 135 to 168 months. At sentencing, the district court briefly questioned Bryson, ascertaining that he had not gone to college despite having carried an 80 average in high school and having done well in math. The sentencing judge also observed that Bryson had "never worked for any substantial period of time." Bryson's attorney addressed the court stating that he believed Bryson "will become a productive citizen."

Bryson's mother also addressed the court and stated that she had spoken to Bryson "several times over the phone" and that he "has learned his lesson." In her request for

leniency, Mrs. Bryson assured the court that "[t]hese occurrences will never occur again." The court replied, "[U]nfortunately Congress has passed laws that tie the Judge's hands.... I don't see what I can do here under the law."

After a brief recess, the court reconvened and stated that it would grant a downward departure. In its terse explanation of the reasons for its departure, the court stated:

> Based on my observation of the defendant, his family, and statements and other information available, the court concludes that the defendant has substantially rehabilitated himself, and that a sentence in category three, offense level 31, of 135 months would substantially prevent integration into society when the defendant is released. Therefore, the court departs downward to level 23.

The court then sentenced Bryson to a term of 60 months imprisonment.

*Joseph*

Joseph's attorney argued at the sentencing hearing that Joseph deserved a downward departure based on post-offense rehabilitation because he had been on bail for four years since the offense and, in that time, he has held a job, has been living with his family and is living "the life that we all expect of a normal citizen in our society." His mother addressed the court, stating that her son "has changed his life around completely" because he has "been working, doing his job, helping when needed" and has been "attending church, doing work and everything we do .... his attitude is different ... he wants to finish college.... "

The government opposed the downward departure motion, arguing that the case law required "extraordinary" rehabilitation and that such departures were usually reserved for defendants who had undergone the difficult process of overcoming drug addiction. Further, the government argued that there was nothing "extraordinary" about maintaining employment and keeping court dates.

The court initially stated:

> This is a very difficult case because the guidelines are applicable and the calculations are correct. Nevertheless, the court is left with the clear finding that the defendant has turned the corner from criminali-

ty to a legal lifestyle and that the probabilities are that he would not revert back to criminal conduct. This is one of those cases where the court is hedged in by the guidelines, which have been properly computed and applied here. I don't know what I can do with this case.

As with Bryson, the court recessed for a short time and reconvened for sentencing. The court observed that Joseph's case called for a sentence of 151 months but then went on to state, "the court is convinced that there has been substantial rehabilitation and that the long [prison] term called for would make it impossible for this defendant to integrate into society in a meaningful way." The court then reduced Joseph's offense level under the Sentencing Guidelines by ten levels to 21 and sentenced Joseph to 60 months in prison.

## DISCUSSION

■ We review a district court's decision to depart from an applicable guideline range for abuse of discretion, "keeping in mind, however, that [a] district court by definition abuses its discretion when it makes an error of law." *See United States v. Franklyn*, 157 F.3d 90, 97–98 (2d Cir.1998) (quoting *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)) (internal quotes and other citations omitted).

■ The Sentencing Guidelines provide a framework applicable to a "heartland" of typical cases embodying the conduct that a given guideline describes. A sentencing court dealing with an "atypical" case, therefore, need not be rigidly constrained by the proscriptions of the Guidelines. Such circumstances are, however, rare. *United States v. Williams*, 37 F.3d 82, 85 ("[T]he power to depart is to be used sparingly and is reserved for unusual cases."). Accordingly, departure due to atypicality is the exception, not the rule.

■ The Guidelines do not enumerate all of the factors that may individually or collectively render a case "atypical." In fact, *any* aggravating or mitigating circumstances of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines may

satisfy the atypicality requirement. 18 U.S.C. § 3553(b) (1994); *United States v. Core,* 125 F.3d 74, 79 (2d Cir.1997), *cert. denied, Reyes v. United States,* —— U.S. ——, 118 S.Ct. 735, 139 L.Ed.2d 672 (1998); U.S.S.G. Ch. 1, Part A, 4(b) (1997). A court may therefore consider the "nature and circumstances of the offense and the history and characteristics of the defendant" when sentencing. 18 U.S.C. § 3553(a)(1) (1994).

■ This Court has held that a sentencing judge may exercise discretion and depart from the applicable guideline range in light of a defendant's efforts toward rehabilitation, provided those efforts are extraordinary. *See United States v. Maier,* 975 F.2d 944, 948–49 (2d Cir.1992). Such departure is usually conferred on drug-addicted defendants who have exhibited extraordinary post-arrest efforts to overcome drug addiction. *Id.; United States v. Williams,* 65 F.3d 301, 305 (2d Cir.1995) (stressing that "a tentative step towards rehabilitation usually is not enough to warrant a downward departure.").

Extraordinary rehabilitation, however, is not narrowly defined or limited to cases of defendants overcoming their drug addiction. *See Core,* 125 F.3d at 78–79 (liberalizing *Maier* rule regarding rehabilitation from drug addiction and holding that inmate's progress towards high school degree may be considered in resentencing); *see also United States v. Barton,* 76 F.3d 499, 503 (2d Cir.1996) (remanding in order to afford parties the opportunity to introduce evidence at resentencing concerning non-drug-related rehabilitation).

Aside from post-conviction rehabilitation, this Court has also recognized a defendant's extraordinary pre-arrest rehabilitation efforts as grounds for departure. *See United States v. Workman,* 80 F.3d 688, 701 (2d Cir.1996). In *Workman,* before his arrest and conviction for participation in a drug trafficking enterprise, the defendant had left the narcotics ring and joined the U.S. Army, completing his military service honorably. *Id.* Affirming the district court's downward departure, this Court stressed the significance of the fact that the "rehabilitation was not undertaken at the spur of impending prosecution for the crimes at issue.... It was an independent (and quite impressive) effort." *Id.*

■ Although a defendant's extraordinary rehabilitation may as a matter of law justify departure, a sentencing court cannot grant downward departures based upon its own penal philosophy. *See United States v. Chabot,* 70 F.3d 259, 260 (2d Cir.1995). "Regardless of how well founded, a belief by the sentencing judge that the punishment set by the Commission is too severe or that the guidelines are too inflexible may not be judicial grounds for departure under the sentencing system mandated by Congress." *United States v. Studley,* 907 F.2d 254, 260 (1st Cir.1990). "Judicial dissatisfaction alone, no matter how steeped in real-world wisdom, cannot be enough to trigger departures, lest the entire system crumble." *Id.* (quoting *United States v. Aguilar–Pena,* 887 F.2d 347, 353 (1st Cir.1989)); *see also Chabot,* 70 F.3d at 260. In other words, there must be evidence of extraordinary rehabilitation before the sentencing court can downwardly depart on this basis.

■ Therefore, while a sentencing court may consider a broad range of information in determining whether to depart downward, it must nonetheless conclude that certain circumstances of the case are "unusual enough for it to fall outside the heartland of cases in the Guideline. To resolve this question, the district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." *Koon,* 518 U.S. at 98, 116 S.Ct. 2035. The district court has an "institutional advantage," that is, a special competence about the ordinariness or unusualness of a particular case, *id.* at 99, 116 S.Ct. 2035, which is to be accorded substantial deference by the appellate courts. Accordingly, we must at this point ascertain whether the record adequately supports the district court's findings that both Bryson and Joseph had undergone extraordinary rehabilitation.

■ The Court applies a "clearly erroneous standard" to district court's factual findings, and overturns a downward departure only for an abuse of discretion. *See United States v. Galante,* 111 F.3d 1029, 1034 (2d Cir.1997). The test for abuse of discretion is "whether the circumstances relied

upon to justify a downward departure are so far removed from those found exceptional in existing case law that the sentencing court may be said to be acting outside permissible limits; then, and only then, should we rule it has misused its discretion." *Id.* at 1036.

■ When presented with a case of a downward departure in sentencing, "absent an express finding to the contrary, the presumption is that the defendant's circumstances are not so unusual as to justify departure." *Studley,* 907 F.2d at 258–59. In *Studley,* the appellate court found that the district court abused its discretion when it downwardly departed in sentencing a defendant convicted of child pornography for alleged exceptional circumstances; the reviewing court determined that the sentencing judge was motivated "by its unhappiness with the rigidity of the guidelines which left the sentencing judge with little room for departure," and not by extraordinary circumstances. *Id.*

■ Here, as in *Studley,* the district court voiced its dissatisfaction with the Guideline range and only vaguely stated its findings regarding Bryson's alleged rehabilitation. Based upon a review of the record, there exists a lack of evidence sufficient to support the conclusion that substantial rehabilitation had taken place and that Bryson's case falls outside the "heartland" of scenarios anticipated by the Guidelines. Bryson's so-called rehabilitation efforts, if any, are far removed from those documented in existing case law, that is, they are readily distinguishable from efforts this Court has held sufficiently atypical to warrant a downward departure.

■ Further, it is difficult to ascertain what particular evidence, if any, formed the basis for the district court's conclusion that Bryson had exhibited "substantial rehabilitation." In fact, this Court deems it significant that the sentencing judge himself did not find any extraordinary rehabilitation despite his departure. At sentencing, the judge had stated: "Well, unlike his co-defendant [Joseph], he hasn't demonstrated that rehabilitation. Perhaps because he hasn't had the opportunity." In other words, the district court itself acknowledged that there were no facts supporting a finding of rehabilitation.

The district court nonetheless departed from the Guidelines and sentenced Bryson, stating: "Based on my observation of the defendant, his family, and statements and other information available, the court concludes that the defendant has substantially rehabilitated himself, and that a sentence in category three, offense level 31, of 135 months would substantially prevent integration into society when the defendant [is] released." Because this penal concern is an impermissible ground for departure, and because the district court's conclusions as to Bryson's alleged rehabilitation are unsupported by findings in the record, the district court abused its discretion in departing downward in Bryson's case. Bryson's sentence is therefore vacated and we remand for resentencing in accordance with the Guidelines.

Joseph, on the other hand, presented a more compelling case to the district court. At sentencing, the district court stated the following:

This is a very difficult case because the guidelines are applicable and the calculations are correct. Nevertheless, the court is left with the clear finding that the defendant has turned the corner from criminality to a legal life style and that the probabilities are that he would not revert back to criminal conduct. This is one of those cases where the court is hedged in by the guidelines, which have been properly computed and applied here. I don't know what I can do with this case. There is no doubt that if I sentence him to what the guidelines require ... the probabilities are enhanced of his permanent criminality since he will fall under the influence of jailed criminals. But Congress and the commission, in their wisdom, have tied our hands.

Thereafter, the court stated that although the applicable guideline sentencing range specifies a minimum sentence of 151 months, there has been substantial rehabilitation calling for a downward departure.

■ However, we cannot make a determination on this record as to whether a downward departure was permissible in Joseph's case. Much depends on the baseline from which an individual's extraordinary re-

habilitation can be measured. The achievement of the ordinary responsibilities of citizenship, such as regular employment and support of dependants may, depending on the starting point of rehabilitation, be sufficient if that achievement is the product of substantial commitment sustained over time. There was evidence that Joseph started out in life with erratic employment and considerably less than responsible behavior at home. In addition, the PSR revealed that Joseph had an extensive criminal history. The evidence also showed that he then sustained employment in a cafeteria and a factory while out on bail, and, according to his mother, "has changed his life around completely," "helping when needed," and "doing work and everything we do," and that his "attitude is different." Of course, these are easy sentiments for a parent to express when a son faces sentencing, and they cannot justify a departure simply because they are spoken. But if a sentencing judge credits such testimony and, based on the entire record, makes a general finding of extraordinary rehabilitation and subsidiary findings of sufficient detail to permit appellate review, a departure is permissible. We therefore remand for further development of the record so that the district court can make findings of fact as to the existence of Joseph's extraordinary rehabilitation. If the court finds that there are no facts demonstrating extraordinary rehabilitation, Joseph is to be resentenced according to the Guidelines.

### CONCLUSION

The case is remanded for the sentencing court to resentence Bryson according to his original offense level of 31. As to Joseph, the district court is to further develop the record regarding the existence of any extraordinary rehabilitation that may warrant downward departure. If the sentencing court is unable to make findings of fact that demonstrate Joseph's extraordinary rehabilitation, Joseph is to be resentenced according to the Guidelines.