**UNITED STATES of America, Appellant,**

v.

**Donald P. CARPENTER, Defendant–Appellee**

**Docket No. 01–1503.**

United States Court of Appeals, Second Circuit.

Argued: Aug. 8, 2002.

Decided: Feb. 25, 2003.

---

Elizabeth S. Riker, Assistant United States Attorney (Joseph A. Pavone, United States Attorney for the Northern District of New York, of counsel), Syracuse, NY, for Appellant.

Samuel C. Young, Costello, Cooney & Fearon, LLP, Syracuse, NY, for Defendant–Appellee.

Before: CALABRESI, POOLER, and SACK, Circuit Judges.

SACK, Circuit Judge.

The government appeals from a judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Chief Judge*) reimposing on the defendant, Donald P. Carpenter, the same sentence it had imposed upon him prior to his first appeal to this Court and our remand to the district court for resentencing.

When Carpenter was originally sentenced, in March 2000, the district court determined that his total offense level for the crime of conviction—conspiracy to steal firearms from a licensed firearms dealer—was 12, after giving him the benefit of a "minor participant" downward adjustment pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 3B1.2.[1] The court sentenced Carpenter principally to a split term of five months' imprisonment followed by five months' home detention, as permitted by U.S.S.G. § 5C1.1(d)(2). On the government's appeal, and after Carpenter had completed serving his split sentence, we held that the minor participant adjustment was unavailable to him as a matter of law. *United States v. Carpenter*, 252 F.3d 230 (2d Cir.2001) (*"Carpenter I"*). We therefore vacated the judgment of the district court and remanded the matter "to the district court with instructions to resentence Carpenter at a base offense level of 15 and a criminal history category of I, which carries a sentencing range of 18–24 months." *Id.*

at 238. We left open the possibility, however, that the district court might decide to give Carpenter the benefit of a further one-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b), in which case, we said, "Carpenter shall be sentenced at a base offense level of 14 and a criminal history category of I, which carries a sentencing range of 15–21 months." *Carpenter I*, 252 F.3d at 238.

On remand, instead of sentencing Carpenter in accordance with that mandate, the district court granted him a three-level downward departure based on the additional level for acceptance of responsibility contemplated by our mandate and some unspecified combination of (1) Carpenter's extraordinary rehabilitation, (2) a finding that his criminal conduct constituted "aberrant behavior" in an otherwise law-abiding life, (3) a finding that further imprisonment would have a detrimental effect on Carpenter's employer, and (4) a conclusion that choosing not to downwardly depart would, under the Guidelines, preclude Carpenter from receiving credit for time he had already served in home detention pursuant to the district court's erroneous original sentence. Under the adjusted offense level of 12, the same as his original offense level, the district court reinstated Carpenter's original sentence, including home detention, which he had already served.

We conclude that the downward departure granted by the district court was unwarranted in part because of the mandate in *Carpenter I* and in part on the merits. We remand, however, for the court to consider a limited downward departure to account for the home detention Carpenter served.

---

**1.** The district court's determination that Carpenter's criminal history placed him in cate-gory I has not been challenged in any of these proceedings.

## BACKGROUND

*Factual Background*

We described the facts of this case at some length in *Carpenter I*, 252 F.3d at 231–32. We repeat them here only insofar as we think it necessary to explain our resolution of this appeal.

In or about September 1994, Carpenter entered into a conspiracy with Marty Wise, a sales clerk at Dick's Clothing and Sporting Goods ("Dick's"), a licensed firearms dealer located near Syracuse, New York, to steal and resell firearms from Dick's. *See id.* During the course of the two-and-one-half-year conspiracy, the conspirators committed some fifty thefts involving forty-two firearms.[2] *Id.* at 232. To execute each theft, Carpenter entered Dick's during Wise's shift, and Wise provided Carpenter with a gun without receiving payment from Carpenter. *Id.* Each time Carpenter left the store, Wise told the cashier that Carpenter was "all set." Carpenter was thus able to remove the firearm from the store without paying for it. *Id.* Carpenter was a former partner in another gun shop and a firearms licensee, and as such was easily able to fence the stolen guns. He divided the proceeds of their sale equally with Wise. *Id.*

The conspirators' enterprise was eventually discovered when Carpenter was unable to produce a receipt for one of the firearms during a confrontation with the store manager at Dick's. *Id.* Carpenter immediately confessed his role in the thefts and revealed Wise's involvement. At the manager's behest, Carpenter visited Wise and urged him to admit to his participation in the scheme. Wise relented and submitted his resignation to Dick's. Both Carpenter and Wise then confessed the details of the conspiracy to agents of the United States Bureau of Alcohol, Tobacco, and Firearms.[3] *Id.* On July 2, 1998, Carpenter pleaded guilty to an information charging him with one count of conspiring to steal firearms from a licensed firearms dealer in violation of 18 U.S.C. §§ 371 & 924(m). *Carpenter I*, 252 F.3d at 232–33.

*Procedural History*

At his first sentencing hearing, on June 2, 1999, Carpenter argued for a downward departure from the offense level of 17 recommended in his pre-sentence report because of his relatively minor role in the conspiracy, *see* U.S.S.G. § 3B1.2, and on the ground that he had voluntarily disclosed the conspiracy to the store manager, *see* U.S.S.G. § 5K2.16.[4] *Carpenter I*, 252 F.3d at 233. Describing the case as "close," the district court declined to depart on the basis of Carpenter's voluntary

---

**2.** Eight of the forty-two guns stolen were stolen, resold, and stolen from Dick's again on multiple occasions. *Carpenter I*, 252 F.3d at 232 n. 2.

**3.** Wise also pleaded guilty to one count of conspiracy to steal firearms from a licensed firearms dealer and was sentenced principally to a term of fifteen months, all of which he served by imprisonment. *Carpenter I*, 252 F.3d at 232.

**4.** Carpenter's base offense level for the conspiracy was calculated by reference to U.S.S.G. § 2X1.1, which instructs that the

base offense level for conspiracies is derived from the guideline for the substantive offense—here, theft of firearms. Section 2K2.1(a)(7), in turn, provides that violations of 18 U.S.C. § 922(u) are to be assigned a base offense level of 12, and U.S.S.G. § 2K2.1(b)(1)(E) provides that a theft involving between twenty-five and forty-nine firearms results in an increase of five points to the base offense level. Because the government has agreed that the conspiracy involved forty-two firearms, *see supra* note 2 and accompanying text; *see also Carpenter I*, 252 F.3d at 233 n. 3, Carpenter's base offense level is 17.

disclosure of the conspiracy, explaining that Carpenter did not disclose his involvement until he was confronted by the store manager. *Id.* After extensive further hearings, the district court granted Carpenter a three-level downward departure on the basis of what it concluded was his comparatively minor role in the conspiracy. *Id.* The district court also departed downward two additional levels for Carpenter's acceptance of responsibility. *Id.*

Carpenter's resulting offense level of 12, combined with his criminal history category of I, yielded a Guideline imprisonment range of ten to sixteen months. More important for purposes of this appeal, it placed Carpenter in "Zone C" of the Sentencing Table, which qualified him for a "split sentence" under which he could serve up to one-half of his term under home detention. *See* U.S.S.G. §§ 5C1.1(d)(2) & 5C1.1(e)(3); *Carpenter I,* 252 F.3d at 233. The district court sentenced Carpenter at the lowest end of that range, ten months, ordering him to serve a term of five months' imprisonment followed by five months' home detention. *Id.*

The government appealed the district court's decision to depart downward in light of Carpenter's role in the conspiracy, arguing that as a matter of law such a departure is not warranted merely because, as in Carpenter's case, a defendant is less culpable than his or her co-conspirator. *Id.* at 234. We agreed, noting that the law of this Circuit makes clear that " '[a] reduction [pursuant to Guidelines § 3B1.2] will not be available simply because the defendant played a lesser role than his co-conspirators.' " *Id.* at 235 (quoting *United States v. Rahman,* 189 F.3d 88, 159 (2d Cir.1999) (per curiam), *cert. denied,* 528 U.S. 1094, 120 S.Ct. 830, 145 L.Ed.2d 698 (2000)) (alternations in original). We therefore vacated Carpenter's sentence and remanded for resentencing.

Our mandate in *Carpenter I* was narrow. The decretal paragraph read in full:

> The judgment imposed by the district court is vacated as to the sentence only and the matter is remanded to the district court with instructions to resentence Carpenter at a base offense level of 15 and a criminal history category of I, which carries a sentencing range of 18–24 months. *See* 18 U.S.C. § 3742(f)(1); Fed.R.Crim.P. 35(a). If, however, the district court determines, upon motion by either party, that Carpenter is entitled to an additional one level reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b), then Carpenter shall be sentenced at a base offense level of 14 and a criminal history category of I, which carries a sentencing range of 15–21 months.

*Carpenter I,* 252 F.3d at 238.

While Carpenter's sentence was on appeal, he completed his original sentence of five months' imprisonment at a community correctional center (or "halfway house") and five months' home detention. By all accounts, Carpenter served his term in the halfway house commendably, taking a job during his incarceration in the machine room of a local manufacturing plant. He later received several supportive letters from his supervisors indicating that he had been a "role model" for other inmates. By June 8, 2001, when we issued our decision in *Carpenter I,* Carpenter had returned home to Syracuse, been relicensed to work as a restaurant manager, and had completed his term of home detention.

On remand to the district court, defense counsel moved for a two-level downward departure pursuant to Guidelines § 5K2.0 for reasons "not adequately taken into consideration ... in formulating the guide-

lines." U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). Carpenter's counsel submitted a memorandum of law describing the grounds on which Carpenter thought a departure was warranted, urging that the mandate of *Carpenter I* did not preclude the district court from departing a second time. Letter dated August 16, 2001, from Carpenter's counsel to the district court (the "August 16 letter").

On August 28, 2001, the district court conducted a resentencing hearing at which the government did not contest that Carpenter was entitled to a one-level reduction for acceptance of responsibility under Guidelines § 3E1.1(b) in addition to the two levels previously awarded to him for acceptance of responsibility under section 3E1.1(a), bringing his total offense level from 17 down to 14.[5] Over the government's objection, the district court also granted Carpenter's motion for an additional two-level downward departure pursuant to section 5K2.0, indicating only that the defense (presumably in the August 16 letter and at the hearing) had "articulated well a basis for a downward departure" and that the court "adopt[ed defense counsel's] reasoning and . . . conclusions . . . *in toto* as the decision of th[e] court." Tr. of Aug. 28, 2001, hearing, at 12. The court concluded:

> Now that the Court has granted a motion for downward departure brought by the defense, I find that the original sentence imposed by this court is the correct sentence and that five months [incarceration] and five months [home detention] was appropriate, and there-

fore I will reimpose the same sentence at this time.

*Id.* at 13.

The government again appeals.

## DISCUSSION

The district court departed downward after adopting arguments made by defense counsel based on "post-sentence rehabilitation efforts [that] were extraordinary . . . [,] aberrant behavior, effect on employment, credit of time [served in home detention]" and on those factors "brought together." *Id.* at 3. We conclude that these factors did not justify the extent of the district court's downward departure. Our mandate in *Carpenter I* precluded consideration of the effect of Carpenter's incarceration on his employer and of Carpenter's allegedly aberrant behavior. Irrespective of whether our mandate precluded consideration of Carpenter's post-incarceration rehabilitation efforts, we conclude that those efforts were insufficient as a matter of law to justify a downward departure. Finally, although we agree that the district court may reduce Carpenter's sentence to account for time already served, we conclude that this basis was insufficient to justify the extent of the district court's downward departure.

### I. Limitations under the *Carpenter I* Mandate

In *United States v. Quintieri*, 306 F.3d 1217 (2d Cir.2002), we held that

> absent explicit language in the mandate to the contrary, resentencing should be

---

**5.** Guidelines § 3E1.1(b) provides that a defendant is entitled to an additional one-point reduction for acceptance of responsibility where his offense level before any reductions under section 3E1.1(a) "is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own

misconduct." Because, as a result of our vacatur, Carpenter's pre-acceptance-of-responsibility-departure offense level returned to 17, he became eligible for this additional point, and after the three-point deduction for acceptance of responsibility, the base offense level of 17 was reduced to 14.

limited [to issues specified in the Court of Appeals's mandate] when the Court of Appeals upholds the underlying convictions but determines that a *sentence* has been erroneously imposed and remands to correct that error.

*Id.* at 1228 (emphasis in original). We also concluded, however, that there are occasions when "the 'spirit of the mandate' requires *de novo* sentencing [by the district court], for example, when the reversal [by the Court of Appeals] effectively undoes the entire knot of calculation" underlying the original sentencing. *Id.* (internal quotation marks omitted).[6]

■ Our decision in *Carpenter I* addressed a single sentencing error, and the mandate was plainly limited to correcting that error and suggesting and permitting a possible additional one-level downward departure. At Carpenter's second sentencing, the district court nonetheless granted a downward departure in addition to that contained in our mandate without explaining which of the four grounds that the defendant asserted for it, or which combination thereof, underlay the court's decision. The district court simply adopted defense counsel's "reasoning and . . . conclusions . . . *in toto* as the decision of [the] court." Tr. of Aug. 28, 2001, hearing, at 12.

On appeal after remand, we now read our original mandate as having precluded litigation or relitigation of at least two of the grounds proffered by Carpenter for a departure: that Carpenter's behavior was "aberrant" and that his further imprison-

ment was detrimental to his employer.[7] Those were issues for Carpenter to establish at his first sentencing and sustain on appeal, if ever. He did not do so. There is nothing in the "spirit of the mandate" of *Carpenter I* that permitted the district court to do so at resentencing, and the court could not, therefore, rely on "aberrant behavior" or the detrimental effect of Carpenter's imprisonment on others to depart downward at that time.

## II. Grounds that Survive the *Carpenter I* Mandate

Were the remaining two grounds asserted for the downward departure upon resentencing valid for that purpose, we would likely remand to the district court to allow it to determine whether it would downwardly depart on those grounds alone, and, if so, to what extent. We conclude, however, that extraordinary rehabilitation was not a valid ground for departing downward, and that the time Carpenter previously served in home detention does not support a downward departure to the extent granted by the district court.

### A. Standard of Review

A "sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in

---

**6.** We also observed that although a defendant ordinarily waives an argument for a downward departure if he or she fails to raise it at the time of the original sentence and on the original appeal, no waiver will be inferred if "the party did not, at the time of the purported waiver, have both an opportunity and an incentive to raise it before the sentencing court or on appeal." *Id.* at 1229.

**7.** Although a downward departure for the detrimental effect of incarceration on others could be based on events occurring after Carpenter was first sentenced, *see Quintieri*, 306 F.3d at 1230, the record reveals no such events in this case. After being released into home detention, he returned to the same position he had held for the previous eleven years.

formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). A court dealing with an "atypical" case is thus not "rigidly constrained" by the Guidelines. *United States v. Bryson,* 163 F.3d 742, 746 (2d Cir.1998) (internal quotation marks omitted). When considering such a departure, the sentencing court must consider the "nature and circumstances of the offense and the history and characteristics of the defendant." *Id.* at 747 (quoting 18 U.S.C. § 3553(a)(1)).

▇▇▇ We apply a "clearly erroneous" standard to a district court's factual findings and review a district court's decision to depart from applicable Guideline range for abuse of discretion. *United States v. Payton,* 159 F.3d 49, 61 (2d Cir.1998). The test for abuse of discretion is:

> whether the circumstances relied upon to justify a downward departure are so far removed from those found exceptional in existing case law that the sentencing court may be said to be acting outside permissible limits; then, and only then, should we rule it has misused its discretion.

*United States v. Galante,* 111 F.3d 1029, 1036 (2d Cir.1997). We review *de novo,* however, whether the factor relied upon by the sentencing court is a permissible ground for departure. *United States v. Williams,* 37 F.3d 82, 85 (2d Cir.1994). Finally, "[i]f there is no clear error in the district court's factual findings and no error in its conclusion that the factor is a permissible ground for departure, ... we review the resulting sentence to determine whether or not it is reasonable." *Id.*

### B. *"Extraordinary Rehabilitation"*

The district court, in granting Carpenter's request for a further downward departure on resentencing, relied in part on his counsel's argument that Carpenter had undergone "extraordinary rehabilitation," both before and after his first sentence. *See* August 16 letter at 5–6. This raises complicated procedural questions as to (1) the extent to which our mandate in *Carpenter I* foreclosed the district court from considering the pre-first-sentencing behavior of Carpenter during the course of the resentencing, and (2) the extent to which the district court was able, in its 2001 resentencing of Carpenter, to take into account post-sentencing "rehabilitation" in light of U.S.S.G. § 5K2.19, effective as of November 1, 2000, which provides that: "Post-sentencing rehabilitative efforts, even if exceptional, undertaken by a defendant after imposition of a term of imprisonment for the instant offense are not an appropriate basis for a downward departure when resentencing the defendant for that offense." Rather than attempt to resolve these questions, we conclude that, in any event, Carpenter's rehabilitation, in its entirety, was insufficient to warrant a downward departure.

The district court did not explain its downward departure insofar as it relied on this ground, other than to state that it "adopt[ed defense counsel's] reasoning." Tr. of Aug. 28, 2001, hearing, at 12. Defense counsel had argued for a departure based on (a) Carpenter's cooperation with the authorities following the exposure of the conspiracy; (b) his "real effort to achieve a genuine rehabilitation" while at the halfway house where he served the first five months of his sentence; (c) the assistance he gave to other residents with their transition into the halfway-house program; (d) his progress in paying restitution to the victim of his crime; and (e) his successful efforts to regain the trust and confidence of his employer. *See* August 16 letter at 5–6.

■ With respect to his cooperation with the authorities, Carpenter had already received a three-level downward departure under Guidelines § 3E1.1 based on that factor. He received two levels under section 3E1.1(a) for "clear[ ] ... acceptance of responsibility for his offense" and an additional level under section 3E1.1(b) for "assist[ing] authorities in the investigation or prosecution of his own misconduct" and "timely notifying authorities of his intention to enter a plea of guilty." Guidelines § 5K2.16 permits a further departure for defendants who voluntarily disclose their offenses to the authorities, but Carpenter did not qualify for such a departure because he cooperated only after he was discovered. In cooperating with the authorities, Carpenter thus does not appear to have accepted responsibility in a manner "not [thus] adequately taken into consideration" by the Sentencing Commission in formulating section 3E1.1. His cooperation with the authorities cannot therefore act as a predicate for a downward departure under section 5K2.0.

■ Regarding Carpenter's payment of restitution, we held in *United States v. Arjoon*, 964 F.2d 167, 171 (2d Cir.1992), that pre-conviction restitution is also a form of acceptance of responsibility "adequately taken into consideration" by the Sentencing Commission in formulating section 3E1.1. Inasmuch as restitution before conviction cannot justify a downward departure, we do not think that compliance with court-ordered restitution after conviction and sentencing can. *See also* 18 U.S.C. §§ 3613A & 3614 (describing the consequences of failing to pay court-ordered restitution).

■ The same holds true of Carpenter's efforts to achieve a "genuine" rehabilitation while incarcerated. *See* August 16 letter at 5. Rehabilitation, even if "genuine," is not *ipso facto* sufficient to justify a

departure. It must be so "extraordinary" as to not have been taken into account by the Sentencing Commission in formulating the Guidelines. *See Bryson*, 163 F.3d at 747 (citing *United States v. Maier*, 975 F.2d 944, 948–49 (2d Cir.1992)). "[E]xemplary" behavior while incarcerated is taken into account by the granting of credits toward early release. *See* 18 U.S.C. § 3624(b). The Sentencing Commission is directed by statute that "[r]ehabilitation ... alone" is not an "extraordinary and compelling" reason for reducing the term of imprisonment for a defendant already serving his or her sentence. 28 U.S.C. § 994(t). Carpenter's behavior while incarcerated may indicate rehabilitation, but we find nothing in the record to support the conclusion that it was so "extraordinary" as to place it beyond those "circumstances ... adequately taken into consideration" by the Sentencing Commission in formulating the Guidelines.

Finally, Carpenter's post-sentencing work helping new inmates at the halfway house, and his regaining of the trust of his employer, do not establish "extraordinary" rehabilitation. Before the adoption of U.S.S.G. § 5K2.19, which prohibited such a reduction for post-sentencing behavior, we recognized that the effort required to defeat an addiction to narcotics may be "extraordinary" and permitted downward departures on that basis. *See, e.g., Bryson*, 163 F.3d at 747; *Maier*, 975 F.2d at 948–49. But following the principle that we stated in *Bryson*, that whether rehabilitation is "extraordinary" depends on "the starting point," *Bryson*, 163 F.3d at 749, we do not think that Carpenter's "achievement of the ordinary responsibilities of citizenship," *id.*, was sufficient to support a departure.

Such a departure was affirmed in *United States v. Workman*, 80 F.3d 688 (2d Cir.1996), where, before he was arrested,

the defendant voluntarily left a narcotics conspiracy, joined the military and completed service honorably. And in *United States v. Cornielle*, 171 F.3d 748 (2d Cir. 1999), we agreed with the district court that extraordinary rehabilitation, combined with other factors, could justify a one-level downward departure for a former member of a narcotics and fraud conspiracy, who, in the four years between the commission of the crime and his arrest, had returned to college, was maintaining a high grade-point average, and was working part time as a volunteer counseling persons infected with HIV.

But those are unusual cases. By contrast, Carpenter appears to have assisted new residents during some of his five months in a halfway house and returned to his previous job as manager of a tavern. Though commendable, we see no basis for considering Carpenter's rehabilitation "extraordinary" in the manner of the defendants in *Workman* and *Cornielle*.

We conclude, then, that insofar as the district court's downward departure was based on Carpenter's "extraordinary rehabilitation," it constituted an abuse of discretion.

## C. Completed Home Detention

■ Carpenter's offense level of 12, as originally determined by the district court, placed his sentence within Zone C of the Sentencing Table. That qualified him for a "split sentence," U.S.S.G. § 5C1.1(d)(2),

which he received: five months' incarceration and five months' home detention. He had completed that sentence when, in *Carpenter I*, we concluded that the sentence was unlawful because it resulted from an improper downward departure. We therefore returned the case to the district court for resentencing at an offense level of at least 14, which provides for a minimum sentence of 15 months. *See Carpenter I*, 252 F.3d at 238. Offense level 14 falls within Zone D of the Guidelines. A sentence within Zone D may only "be satisfied by a sentence of imprisonment." U.S.S.G. § 5C1.1(f). Split sentences are not permitted.

■ Had the district court followed our mandate in *Carpenter I* to the letter, it would have sentenced Carpenter to no less than 15 months of imprisonment on resentencing. The Bureau of Prisons ("BOP"), following 18 U.S.C. § 3585(b),[8] would doubtless have given Carpenter credit for the five months he had already served incarcerated, leaving him with ten months to serve. But, the parties agree, the BOP would not have given Carpenter credit for his five months in home detention.[9] Without the district court making some downward departure to account for the home detention, then, Carpenter would have served five months in home detention for the crime of conviction in addition to the 15 months' incarceration that was the appropriate penalty—assuming, as we think

---

8. Section 3585(b) requires that defendants receive credit "toward the service of a term of imprisonment for any time ... spent in official detention prior to the date the sentence commences as a result of the offense for which the sentence was imposed." Such credit is determined by the BOP. *United States v. Wilson*, 503 U.S. 329, 333, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992).

9. The parties apparently so conclude because the Supreme Court, in *Reno v. Koray*, 515

U.S. 50, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995), approved the BOP's interpretation of 18 U.S.C. § 3585(b) under which "[a] condition of bail or bond which ... includes 'house arrest' ... is not [credited] as time in official detention," because "[s]uch a defendant is not subject to the discretion of the U.S. Attorney General." *Koray*, 515 U.S. at 61 n. 4, 115 S.Ct. 2021 (quoting U.S. Dep't of Justice, Bureau of Prisons Program Statement No. 5880.28(c) (July 29, 1994)).

we should, that the district court is strongly inclined to sentence Carpenter at the bottom end of the applicable Guideline range. We do not think that the spirit of the *Carpenter I* mandate requires that result. Not only is it unjust, it may fall athwart the proscriptions of the Double Jeopardy Clause of the Fifth Amendment to the Constitution.[10]

Under 18 U.S.C. § 3553(a), the district court was required to "impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth" elsewhere in the subsection. Those purposes include "provid[ing] just punishment for the offense," *id.* § 3553(a)(2)(A), and "afford[ing] adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B). Section 3553(a) also instructs the district court to consider, *inter alia*, "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6). The district court is permitted to depart from the Guidelines when they fail to consider aggravating or mitigating circumstances. *Id.* § 3553(b). Where, as here, the defendant has served time in home detention that will not be credited toward his new sentence, he has served a portion of the "just punishment for the offense," the served time has provided a portion of the necessary deterrent, and, if home detention is not taken into account, he will, upon his ultimate release, have served a longer sentence than would

a similarly situated defendant who had been correctly sentenced under the Guidelines in the first instance. Because the Guidelines do not consider these mitigating circumstances, the district court is permitted to depart downward to account for them.

Other circuits have read 18 U.S.C. § 3553 in this manner. As the Ninth Circuit explained in *United States v. Miller*, 991 F.2d 552, 554 (9th Cir.1993), *limited in part, United States v. Daggao*, 28 F.3d 985, 988 (9th Cir.1994), *cert. denied*, 514 U.S. 1031, 115 S.Ct. 1390, 131 L.Ed.2d 242 (1995):

[t]he fact that [the defendants have] already been punished to some extent is ... relevant to what further sentence is needed to punish [the defendant] and deter others. *See* 18 U.S.C. § 3553(a)(2) (sentence should reflect these and other considerations). And because the [Sentencing] Commission seems not to have considered the issue of compensating for time erroneously served, the district court [is] free to depart. *See* 18 U.S.C. § 3553(b).

*Miller*, 991 F.2d at 554. Three years later, the Third Circuit adopted this reasoning in *United States v. Romualdi*, 101 F.3d 971, 977 (3d Cir.1996), stating that it "agree[d]" with *Miller*'s conclusion that it may be " 'proper to depart because of the ... home detention [a defendant] had already served.' " *Romualdi*, 101 F.3d at

---

10. The Double Jeopardy Clause protects defendants from " 'multiple punishments for the same offense' imposed in a single proceeding." *Jones v. Thomas*, 491 U.S. 376, 381, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). In *Pearce*, the Supreme Court held that "the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must

be fully 'credited' in imposing sentence upon a new conviction for the same offense." *Pearce*, 395 U.S. at 718–19, 89 S.Ct. 2072, *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 802–03, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The Court has since reiterated its understanding that "[the] remedy of crediting time already served against the sentence that remained in place" fully vindicates defendants' double jeopardy rights. *Jones*, 491 U.S. at 382, 109 S.Ct. 2522.

977 (quoting *Miller,* 991 F.2d at 554).[11]

We therefore remand the case to the district court for it, in accordance with our mandate in *Carpenter I,* "to resentence Carpenter at a base level of . . . [no less than] 14 and a criminal history category of I, which carries a sentencing range of 15–21 months," but with authority for the court to reduce the term of Carpenter's sentence under 18 U.S.C. § 3553(b) for the time Carpenter erroneously served in home detention. The district court should determine the extent of any such departure based on, *inter alia,* its knowledge of the precise conditions of Carpenter's home detention and its assessment of the amount of reduction of his additional term of incarceration that would properly take into account the factors enumerated in 18 U.S.C. § 3553(a)(2, 5 & 6).

Finally, we note the Ninth Circuit's counsel, in *Miller,* that

> [the district court's] freedom [to depart downward] wasn't unlimited. Home detention is a lighter punishment than prison, so it would [be] wrong for the district court to reduce [a] prison term by more than [the time served] under home detention. Even reducing the prison term by exactly [the time served under home detention] would leave [a defendant] with a lighter punishment than Congress authorized . . . .

*Miller,* 991 F.2d at 554. Indeed, we think that the Ninth Circuit understated the case. In our view, the conditions of home detention are typically much less onerous than even the least restrictive institutional incarceration. We would be puzzled if, on remand, the district court reduced Carpen-

ter's term of imprisonment by more than half the time he spent in home detention. In light of our lack of knowledge of the precise conditions of Carpenter's home detention, however, we decline to hold that a reduction of greater magnitude would be factually insupportable, or a lesser reduction inappropriate.

## CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court and remand for the court to resentence Carpenter in accordance with the mandate of this Court in *Carpenter I,* as explained above, except that the district court may consider a reduction in the term of Carpenter's sentence to take into account the time he erroneously served in home detention.

---

11. We thus do not decide whether the district court would, alternatively, also have the authority simply to give Carpenter appropriate credit for the time he served in home detention or whether such a sentence would conflict with *United States v. Wilson,* 503 U.S.

329, 333, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992), which holds that it is the BOP and not the sentencing court that has the authority to credit time served in "official detention" under 18 U.S.C. § 3585.