UNITED STATES of America,

v.

Bruce W. GORDON, Defendant.

No. 96–CR–1016(ADS).

United States District Court,
E.D. New York.

June 2, 2003.

Roslynn R. Mauskopf, United States Attorney, by Ronald G. White, Assistant United States Attorney, Brooklyn, NY, for United States of America.

Storch, Amini & Munves, P.C., by Norman Trabulus, of Counsel, Garden City, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In this case, a jury convicted the defendant Bruce W. Gordon ("Gordon" or the "defendant") of numerous felony charges

for his role in a scheme to market membership in a purportedly prestigious "Who's Who" organization. The Second Circuit affirmed the defendant's convictions but vacated the defendant's sentence and remanded to this Court to consider the defendant's ultimate offense level.

## I. BACKGROUND

In April 1998, a jury convicted the defendant of numerous felony counts, including conspiracy to commit mail fraud; mail fraud; tax evasion; and money laundering. In January 2000, the Court sentenced the defendant. At the sentencing hearing, the Court found that the mail fraud and tax fraud counts should be grouped pursuant to U.S.S.G. § 3D1.2(c) ("Section 3D1.2(c)"). The Court then found that the defendant had a combined offense level of 30, with a sentencing range of 97 to 121 months and sentenced him to 97 months incarceration.

In May 2002, the Second Circuit affirmed the convictions of the defendant and his co-defendants in a summary order. In a separate opinion, the Second Circuit reversed and remanded for resentencing of the defendant on the ground that this Court should have grouped the mail fraud and tax fraud counts under U.S.S.G. § 3D1.2(d) ("Section 3D1.2(d)"), instead of subsection (c). *See United States v. Gordon,* 291 F.3d 181, 192–93 (2d Cir.2002). The Second Circuit also stated that "[t]he government concludes that the district court's approach improperly lowered Gordon's final sentence by two levels, although, for reasons explained in the margin, the reduction might be only one level." *Id.* at 189. In the margin at footnote 3, the court noted the following:

> Although the government has not supplied its calculation, it appears likely that it combined the fraud and tax losses, identified the appropriate level for the combined total loss from both the fraud and tax loss tables, added adjustments, *including four levels for role in the offense,* to each of the levels, and then used level 31, resulting from the tax guideline, because that was higher than level 29, resulting from the fraud guideline. One more level was then added for the money laundering offense, pursuant to § 3D1.4, resulting in an ultimate offense level for Gordon of 32. However, it is not clear that the four-level enhancement for role in the offense (leader of activity involving five or more participants, § 3B1.1(a)) may be applied in determining the offense level for the tax offense. If that enhancement is applied only to the fraud offense (as to which it unquestionably applies), the combined dollar loss would result in level 29 under the fraud guideline and level 27 under the tax guideline; in that event, the level for the group would be 29, and *Gordon's ultimate level, adjusted for the money laundering offense would be 31* (the money laundering offense, the level of which is 25, causes a two-level increase if the level for the combined fraud and tax group is 29, but only a one-level increase if the level for the combined group is 31. *See* § 3D1.4(a), (b)). We leave for consideration by the district court on remand, after receiving submissions from the parties, how the ultimate offense level should be calculated once the tax and fraud offenses are grouped under subsection (d).

*Id.* at 189 n. 3 (emphasis added).

There is no doubt that the four level enhancement for role in the offense (leader of activity involving five or more participants) is not to be applied in determining the offense level for the tax counts. Therefore, after properly grouping the mail and tax fraud offenses under Section 3D1.2(d), the proper level would be 31 with

a term of imprisonment of 108 to 135 months. In fact, the government agrees with this determination. *See* Letter of Assistant United States Attorney Ronald G. White dated May 12, 2003 at 2 n. 1 ("The government agrees with Gordon (Gordon Letter at 7–8) that the grouping of the Mail Fraud and Tax Fraud Counts under subsection (d) of § 3D1.2 produces a combined final offense level of 31, which is one level higher than the offense level at his original sentencing. Level 31 carries a sentencing range of 108 to 135 months.").

At re-sentencing, the defendant raises two principal contentions. First, the defendant asserts that on this limited re-sentencing he may raise a new grouping argument, namely that the money launder-ing and the tax fraud counts should be grouped under Section 3D1.2(b) rather than grouping the mail fraud and tax fraud counts. Second, the defendant requests that the Court should depart downwardly on the following grounds: his prior home detention as part of his pre-trial bail condi-tions; that the fraud falls outside the "heartland"; that the loss overstates the seriousness of the crime; or a combination of the factors. The government contends that none of these arguments has merit.

## II. DISCUSSION

### A. The Mandate Rule

■ Where, as here, the Second Circuit remands a case to correct a specific sen-tencing error, the defendant may not raise issues which he did not raise at his original sentencing. *United States v. Quintieri,* 306 F.3d 1217, 1229 (2d Cir.2002) ("[W]e conclude that the law of the case ordinarily prohibits a party, upon resentencing or an appeal from that resentencing, from rais-ing issues that he or she waived by not litigating them at the time of the initial sentencing."). The exception to this rule is where "a party did not, at the time of the purported waiver, have both an opportuni-ty and an incentive to raise [the issue] before the sentencing court or on appeal." *Id.*

■ Here, the defendant asserts that he may raise a new grouping argument, namely that the money laundering and tax fraud counts should be grouped under Sec-tion 3D1.2(b). In support of his conten-tion, the defendant argues that he had no incentive to raise this grouping argument "because it yielded—albeit through a dif-ferent analysis—the same total offense lev-el of 30" which was the offense level and corresponding sentence actually adopted by the Court at the first sentencing. In response, the government contends that the defendant did have an opportunity and an incentive to raise the grouping argu-ment that he now urges. The Court agrees with the government.

The Court finds that the defendant had an opportunity and incentive to raise this new grouping argument prior to his re-sentencing. First, he did not raise the new grouping argument at the time he filed his written objections to the Pre Sen-tence Report in January 1999. In those objections, the defendant urged two alter-native grouping options: (1) the grouping of the mail fraud and money laundering counts; and (2) the grouping of all the mail fraud, tax fraud and money laundering counts under Section 3D1.2(c) and (d). Al-though defendant's counsel had an oppor-tunity to raise the argument that the mon-ey laundering and the tax fraud counts should be grouped, he did not do so. He did have an incentive to raise this argu-ment at that time, when he raised two alternative grouping recommendations. Second, he did not raise the new grouping argument at sentencing when the govern-ment objected to any grouping by the Court. As the government correctly

notes, it would have been prudent to advise the Court of any other grouping methods which might lead to the same offense level. Third, he did not raise this new grouping argument on appeal which would have purportedly made any grouping error harmless.

Based on the foregoing, the Court finds that the defendant has waived his new grouping argument that the money laundering and tax fraud counts should be grouped under Section 3D1.2(b). However, to complete the record, the Court will address the merits of whether the grouping of the money laundering and tax fraud counts is proper under Section 3D1.2(b).

**B. Should the Court Group the Money Laundering and Tax Fraud Counts under Section 3D1.2(b)?**

Section 3D1.2(b) provides that

All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule: (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

U.S. Sentencing Guidelines Manual § 3D1.2(b) (2000). It is now well-settled in the Second Circuit that "in general, fraud and money laundering should *not* be grouped together under Section 3D1.2(b)." *United States v. Sabbeth*, 262 F.3d 207, 221 (2d Cir.2001) (emphasis in original) (citing *United States v. Napoli*, 179 F.3d 1, 7–8 (2d Cir.1999)). The principal reason for this general rule is that these crimes "involve different harms to different victims." *Sabbeth*, 262 F.3d at 221 (citing *Napoli*, 179 F.3d at 7–8). The main thrust of the cases on this subject is that the victims of fraud are the people who are actually defrauded, while the victim of money laun-

dering is society at large. *Id.* Money laundering harms society when "the ill-gotten gains from a criminal enterprise are allowed to be used for profit, the sources of these funds are concealed from police investigation or criminals are allowed to disperse capital from lawfully operating economic institutions to other criminals in and out of the country." *Id.* An exception to this general rule exists where fraud and money laundering counts "are 'so highly interwoven ... that the victim' of each is the same." *Id.* (citing *Napoli*, 179 F.3d at 8 n. 3).

■ The Court finds that the money laundering and tax fraud counts in this case are not so highly interwoven that they should be grouped. The victims of the tax fraud and the money laundering counts were in part different. The tax fraud involved the defendant's misrepresentations to the Internal Revenue Service (the "IRS") concerning his wealth. As such, the victim of the tax fraud was the IRS. *See* U.S.S.G. § 2D1.2, cmt. n. 2 (2000) ("The term 'victim' is not intended to include indirect or secondary victims."). On the other hand, the money laundering involved the defendant's transfer of criminal proceeds to a shell company, which in turn concealed his ownership and control of these amounts from the IRS, the creditors of Who's Who Worldwide, and ultimately the bankruptcy trustee and law enforcement. As such, the victim of the money laundering, as consistently stated in the applicable cases, was society at large because the defendant attempted to conceal his criminal proceeds from the public as a whole. *See id.*

A finding that the money laundering and tax fraud counts are not so highly interwoven as to permit grouping is consistent with Second Circuit precedent. *See United States v. Szur*, 289 F.3d 200, 216 (2d Cir.2002) (finding that the victims of

the money laundering—society—and the stock fraud—the individual investors— were different where the defendants stock brokers devised a scheme concealing their exorbitant commissions from stock purchasers and then transferred those commissions into other bank accounts); *Sabbeth*, 262 F.3d at 211 (finding that the victims of the money laundering—society—and the bankruptcy fraud—the banks—were different where the defendant devised a scheme to transfer the remaining assets in his financially unstable company into secret accounts); *United States v. Kalust*, 249 F.3d 106, 110 (2d Cir.2001) (finding that the victims of the money laundering—society—and the conspiracy to steal automobile airbags—the airbag owners—were different where the defendant sold stolen airbags to customers and laundered the proceeds of these sales through his company's bank accounts).

Based on the foregoing, the Court finds that even if the issue was properly preserved, the money laundering and tax fraud counts should not be grouped under Section 3D1.2(b).

## C. As to a Downward Departure based on the Defendant's Term of Home Detention

The defendant seeks a downward departure based on "time spent in home detention, not creditable towards sentence." *See* Letter of Norman Trabulus dated April 22, 2003 at 10. In support of this application, the defendant cites to *United States v. Carpenter*, 320 F.3d 334 (2d Cir. 2003) where the Second Circuit stated that the district court could depart based on the defendant's home detention. *Id.* at 345. In *Carpenter*, the Second Circuit stated that:

Where, as here, the defendant has served time in home detention that will not be credited toward his new sentence,

he has served a portion of the "just punishment for the offense," the served time has provided a portion of the necessary deterrent, and, if home detention is not taken into account, he will, upon his ultimate release, have served a longer sentence than would a similarly situated defendant who had been correctly sentenced under the Guidelines in the first instance. Because the Guidelines do not consider these mitigating circumstances, the district court is permitted to depart downward to account for them.

*Id.* *Carpenter* is factually distinguished from this case. In *Carpenter*, the defendant's offense level was 12, which entitled him to a split sentence of 5 months home detention and 5 months incarceration. On appeal, the case was remanded to the district court for re-sentencing. By that time, the defendant had already served both the home detention and the incarceration. At the re-sentencing, because of the Second Circuit's ruling, the offense level was increased to 14, the defendant was no longer in the split sentence zone and his sentence had to be satisfied by a term of incarceration of 15 to 21 months. In that unusual circumstance, the defendant would have received no credit for his 5 months of home detention. Based on those extraordinary facts, the Second Circuit ruled that the district court could downwardly depart based on the defendant's home detention, served as a sentence.

■ Without a departure based on his home detention, *Carpenter* would serve a longer sentence than was legally proper. *Id.* Here, the defendant's situation does not present this problem because he did not serve his home detention as part of his sentence. Rather, he served his home detention as part of his pre-trial bail conditions. Accordingly, while the Court acknowledges that it has the authority to downwardly depart based on uncredited

home detention, as part of a sentence, the Court denies the application in this case.

At the re-sentencing, the defendant raised three additional grounds for downward departure: (1) the fraud falls outside the "heartland"; (2) the loss overstates the seriousness of the crime; and (3) a combination of the factors. For the reasons set forth on the record, the Court denies these applications.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Mandate Rule prohibits the defendant Bruce W. Gordon's new argument that his money laundering and tax fraud counts should be grouped under U.S.S.G. § 3D1.2(b); and it is further

**ORDERED,** that the defendant's applications for downward departure are denied in their entirety; and it is further

**ORDERED,** that the defendant is re-sentenced to a total of 108 months incarceration, with credit for time already served.

**SO ORDERED.**